**INDEPENDENT PRODUCTIONS COR-
PORATION and IPC Distributors,
Inc., Plaintiffs,**

**v.**

**LOEW'S, Incorporated et al., Defendants.**

United States District Court
S. D. New York.

Feb. 5, 1957.

On Motion for Reargument
March 1, 1957.

Rosston, Hort & Brussel, New York City, for plaintiffs.

Donovan, Leisure, Newton & Irvine, New York City, for defendant General Film Laboratories, Inc.

Schwartz & Frohlich, New York City, for defendants Columbia Pictures Corp. and Columbia Pictures International Corp.

Sidney Schreiber, New York City, for defendants Motion Picture Ass'n of America, Inc. and Association of Motion Picture Producers, Inc.

Benjamin Melniker, New York City, for defendants Loew's Inc. and Loew's International Corp.

Meyer H. Lavenstein, New York City, for defendants Republic Pictures Corp., Republic Pictures International Corp. and Republic Productions, Inc.

Robert W. Perkins, New York City, for defendants Warner Bros. Pictures, Inc. (1953) (Del.), Warner Bros. Pictures International Corp. and Warner Bros. Pictures Distributing Corp.

Dwight, Royall, Harris, Koegel & Caskey, New York City, for defendants Twentieth Century-Fox Film Corp. (Del.), Twentieth Century-Fox International Corp. and Twentieth Century-Fox Inter-America, Inc.

Louis Phillips, New York City, for defendants Paramount Pictures Corp., Paramount International Films, Inc. and Paramount Film Distributing Corp.

Adolph Schimel, New York City, for defendants Universal Pictures Co., Inc., Universal Film Exchanges, Inc. and Universal International Films, Inc.

J. Miller Walker, New York City, for defendant RKO Teleradio Pictures, Inc. (formerly known and referred to in the complaint as RKO Radio Pictures, Inc.)

Phillips, Nizer, Benjamin & Krim, New York City, for defendants United Artists Corp., Eagle Lion Classics, Inc., National Screen Service Corp. and Comedia Enterprises, Inc.

Frederick W. R. Pride, Charles F. Young, New York City, for defendants Fox West Coast Theatres Corp. and Fox West Coast Agency.

Wechsler & Solodar, New York City, for defendant H. Schoenstadt & Sons, Inc. McConnell, Van Hook & Paschen, Chicago, Ill., of counsel.

Davis & Gilbert, New York City, for defendants Ryder Sound Services, Inc., Glen Glenn Sound Co. (a corporation) and Glen Glenn Sound Co. (a partnership).

Cahill, Gordon, Reindel & Ohl, New York City, for defendant Radio Corp. of America.

Spivak & Kantor, New York City, for defendants Walsh and Francavilla.

McGOHEY, District Judge.

Ten motions are here considered. One is by the plaintiffs. Nine are by various defendants. Of the latter six are to quash service and to dismiss for lack of venue under Sec. 12 of the Clayton Act;[1] two are to stay depositions; one is to vacate a notice of deposition. The plaintiffs' motion seeks an order regulating the taking of depositions.

The complaint alleges that the plaintiffs are respectively corporations of California and New York engaged in the production, distribution and exhibition of motion pictures. They seek treble damages of $7.5 million alleged to have been sustained by reason of a conspiracy in violation of the Anti-trust laws, carried on by 108 defendants consisting of corporations, partnerships, associations and individuals engaged in various branches of the motion picture industry. Of these 20 individuals and 18 corporations are designated merely as "Doe."

It is alleged that the defendants carried on activities in furtherance of the conspiracy in "the County of New York" and other places throughout the United States and foreign countries and that "each defendant [acted] in said places either in person or by and through their co-defendants and the co-conspirators

1. 15 U.S.C.A. § 22.

as their agents in the effectuation and consummation of the conspiracy."

### The Motions to Quash and Dismiss.

General Film Laboratories, Inc. and H. Schoenstadt & Sons, Inc. move to quash service and to dismiss for lack of venue. Ryder Sound Services, Inc., Glen Glenn Sound Company, a corporation, Glen Glenn Sound Co., a partnership, and Cinema Research Corporation move to dismiss for lack of venue.

The presidents of these defendants aver in separate affidavits that their respective corporations are not incorporated in or authorized to do business in New York, have no office or agents here and transact no business here of any kind. Moreover, the presidents of General Film Laboratories, Inc. and Ryder Sound Services, Inc. aver that process was not served on any one authorized to accept service for those corporations. Glen Glenn and Harry Eckles filed affidavits asserting that, while they conducted business as co-partners during a period of seven months in 1937 (ten years before the initiation of the alleged conspiracy), they did not and never have conducted any partnership under the name of Glen Glenn Sound Co.

These affidavits stand uncontroverted. The plaintiffs submitted only their attorney's affidavit in opposition to these six motions. This affidavit, after summarizing the allegations of the complaint, merely states: "In the moving affidavits it is averred that movants are not engaged in the Southern District of New York in the pursuit of their ordinary commercial activities and that, for that reason, they are neither 'found' nor transacting business in this District within the meaning of Sec. 12 of the Clayton Act (15 U.S.C. § 15 [sic] [22]). For the reasons which will be urged in plaintiffs' memorandum of law, it is respectfully submitted that this premise is fallacious and that the mo-

tions to quash should, in all respects, be denied." In the memorandum of law, it is asserted that the moving defendants' disclaimer of commercial activities within the Southern District of New York is "irrelevant" and that, "irrespective of the situs of their corporate residence or of their ordinary commercial activities, if movants through their co-defendants or their co-conspirators participated in the conspiracy alleged in the amended complaint, they were suable in the Southern District of New York."

■ The question thus presented is whether in a private anti-trust suit, the mere allegation of conspiracy makes an alleged co-conspirator, as such, a foreign corporation's "agent" for purposes of venue under Sec. 12 of the Clayton Act[2] in any district where such co-conspirator is amenable to suit and the conspiracy is alleged to have had an impact, even though such corporation concededly is not an "inhabitant" of, or otherwise "found" in, the district of suit and has not at any material time carried on there any commercial activity in pursuit of its corporate objectives.[3] For the reasons hereafter set forth, I think the question must be answered in the negative.

On the uncontroverted evidence I find that, under Sec. 12 of the Clayton Act, venue as to each of the moving defendants is lacking in this district, and also that no valid service of process was effected on General Film Laboratories, Inc. or Ryder Sound Services, Inc., or Glen Glenn Sound Co., a partnership.

The action as to these three defendants will be ordered dismissed for lack of jurisdiction of the defendants and lack of venue.

The other movants as to venue have not challenged service of process. Accordingly, the action as against H. Schoenstadt & Sons, Inc. will be ordered transferred to the Northern District of

---

2. 15 U.S.C.A. § 22.

3. See United States v. Scophony Corp., 333 U.S. 795–812, 68 S.Ct. 855, 92 L.Ed. 1091.

Illinois; the action against Glen Glenn Sound Company, a corporation, and Cinema Research Corporation, will be ordered transferred to the Southern District of California.

Although, by enacting Sec. 12 of the Clayton Act, Congress substantially enlarged the former venue provisions of the Anti-trust laws as to corporations, it did not thereby "give plaintiffs free rein to haul defendants hither and yon at their caprice."[4] Congress has authorized prosecution by the Government of a criminal conspiracy in violation of the Anti-trust laws in any district where it was formed or effectuated or in which any overt act was performed. In civil actions, however, Congress has not given the Government similar latitude. The Government can bring parties residing outside the district into a civil action only if the Court shall determine that the ends of justice so require.[5] And it seems significant that Congress has made this procedure available only to the Government.[6] As former Chief Judge Knox of this court observed in Hansen Packing Co. v. Armour & Co.,[7] "the failure of Congress to make similar provisions for civil suits by private litigants implies an intent to withhold the privilege." Judge Knox rejected Hansen's contention that the mere allegation of conspiracy was sufficient to establish venue against a New Jersey corporation not shown by the plaintiff to have transacted business in this district.

Here, nevertheless, the plaintiffs contend that, since the decision in United States v. Scophony, supra, decided in 1948, "the rule that a conspiracy is to be likened to a copartnership in which each participant acts as the agent of the other has governed the application and interpretation of Section 12 of the Clayton Act" and that, "it is now *the settled rule* in the 2nd, 4th, 5th and 9th Circuits that for the purpose of determining venue in an anti-trust conspiracy case, the situs of the acts of the conspirators and the place of impact of the conspiracy will control." (Emphasis supplied.) The only appellate court decision cited in support of this "rule" is Giusti v. Pyrotechnic Industries[8] by the Court of Appeals for the Ninth Circuit. The other five decisions cited are by District Courts in California,[9] New York,[10] Virginia[11] and Louisiana.[12]

Whatever may be true elsewhere, there is certainly no such "settled rule" in the Second Circuit. The contrary decision in Hansen Packing Co. v. Armour supra, has not been overruled.

The plaintiffs, in asserting that there is a "settled rule" in the Second Circuit, appear to rely on the decision in Bertha Building Corp. v. National Theatres, supra. The Court in that case reviewed the other four district court decisions referred to above and found them all to be in accord with what the Court called "the principle enunciated in the Giusti case * * * that venue is proper as to all conspirators in the district in which the impact of the conspiracy caused the damage to the plaintiff."[13] Those cases do indeed appear to be in accord with that view. But with the utmost deference, I cannot agree

4. United States v. Nat. City Lines, 334 U.S. 573–588, 68 S.Ct. 1169, 92 L.Ed. 1584.

5. 15 U.S.C.A. § 5.

6. State of Georgia v. Pennsylvania R. Co., 324 U.S. 439–467, 65 S.Ct. 716, 89 L.Ed. 1051.

7. D.C.S.D.N.Y.1936, 16 F.Supp. 784, 786–87, cited with approval in State of Georgia v. Pennsylvania R. Co., supra.

8. 1946, 156 F.2d 351.

9. De Golia v. Twentieth Century-Fox Film Corp., D.C.N.D.Cal., 140 F.Supp.

316; Steiner v. Twentieth Century-Fox Film Corp., D.C.S.D.Cal., 140 F.Supp. 906.

10. Bertha Building Corp. v. National Theatres Corp., D.C.E.D.N.Y., 140 F.Supp. 909.

11. Ross-Bart Port Theatre v. Eagle Lion Films, D.C.E.D.Va., 140 F.Supp. 401.

12. Don George, Inc., v. Paramount Pictures, D.C.W.D.La., 111 F.Supp. 458.

13. 140 F.Supp. at page 913.

that the Giusti decision "enunciated" any such "principle" as to venue under Sec. 12 of the Clayton Act. The Giusti case was an action for treble damages brought in the Northern District of California against domestic and foreign corporations. Process against one of the latter, Triumph Explosives, Inc., was served on the Secretary of State of California. Triumph had withdrawn from the state prior to suit though earlier it had been qualified and had transacted business there. It appeared specially to challenge the service. It also moved separately to dismiss for lack of venue under Sec. 12 of the Clayton Act, on the ground that at the time of suit it was not "found" or "transacting business" in the California district. The District Court granted both motions and Giusti appealed.

The complaint alleged a conspiracy by the defendants to monopolize and fix prices in, the sale of fireworks, beginning in 1935 and continuing up to the commencement of suit in 1944.[14] Triumph conceded in its affidavits [15] and brief [16] that, prior to 1939 it had sold and shipped its products to dealers in California; in 1939 its Vice-President in charge of sales opened its office and warehouse in Oakland and thereafter transacted its business in California continuously until some unspecified date after the outbreak of World War II; in December, 1943 it filed a Certificate of Withdrawal from business in California for which, pursuant to California law, it had qualified in January, 1940. Under California law withdrawal was conditioned on the corporation's written consent to substituted service on the Secretary of State "in any action upon any liability or obligation incurred within this State prior to the filing of the Certificate of Withdrawal." The Circuit Court's opinion, except for the last paragraph, deals solely with whether the liability which Giusti sued on, met California's require-ment for substituted service. The Court held it did. Although Triumph's concessions of qualification, actual presence and the regular transaction of business in the California district during four years of the alleged conspiracy's existence seem sufficient support for that holding, the Circuit Court rested it on a different ground. Noting and apparently accepting as true the allegation in the complaint that the conspirators initiated their restrictive agreements in 1935 and, in practical effect, had destroyed the plaintiff's business by the end of 1936 (before Triumph's admitted entrance into and transaction of business in the district), the Court said [156 F.2d 354]: "The California members of the conspiracy were agents of Triumph in the conspiracy's attempt to destroy appellant's business. Triumph was in California acting through such agents, just as it would have been if it had employed a group of agents there continuously to underbid on sales to [Giusti's] customers." If the Court thereby enunciated any principle, that could only have related to the single subject the Court was then discussing, namely, the manner in which a foreign corporation might incur liability sufficient to support substituted service of process under California law in a suit brought in that state on such liability after withdrawal. The Court indeed declined to pass on the question of venue under Sec. 12 of the Clayton Act, although Triumph urged the point strongly in its brief. On the contrary, the Court held that question to be moot on the ground that, in its Certificate of Withdrawal, Triumph had expressly consented to be sued in California.

Moreover, even in the Bertha Building Corp. case, the Court did not rely solely on the so-called Giusti "principle." There, the plaintiff, a California corporation which owned and operated motion picture theatres in Los Angles, charged

14. See Transcript of Record on Appeal pp. 2–11.

15. Id. p. 30, Bell affidavit; and pp. 31–38 Trempy affidavit.

16. Brief for Appellee pp. 1, 2.

that National Theatres, a foreign corporation, conspired with others in and out of California to monopolize interstate trade in motion picture films throughout the United States and as a result, damaged the plaintiff's business in California. The claim concededly accrued there in 1935. The action in the Eastern District of New York was not commenced until 1951. This was prior to the effective date of the present four-year statute of limitations prescribed in Sec. 4B of the Clayton Act.[17] National, relying on California's three-year statute of limitations,[18] moved for judgment on the pleadings dismissing the complaint. The plaintiff contended the statute had been tolled because National was "out of the state when the cause of action accrue[d]" and had not returned.[19] The Court, after considering the four District Court decisions, which it said "reaffirmed" and were in accord with "the principle enunciated in the Giusti case," concluded that "on the basis of the allegation of the complaint, under Section 12 of the Clayton Act * * * the court sitting in California could have had jurisdiction over the defendant," and granted National's motion for judgment dismissing the complaint. The Court, however, did not let the matter rest there. It went further and found that National was both "parent and grandparent" of numerous subsidiaries in a "multi-corporate structure" whose managers actually "were present in California transacting business of the corporate structure and of direct interest to National." Accordingly, "as alternative grounds for dismissing the complaint as barred by the California statute of limitations," the Court found "as a matter of fact that within the interpretation given Section 12 of the Clayton Act * * * in United States v. Scophony Corp., 1947, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 * * * and Eastman Kodak Co. v.

Southern Photo Materials Company, 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 * * * National Theatres was transacting business in California."

The Scophony decision certainly does not accord with the so-called Giusti "principle." In that action, brought in this district, the Government sued Scophony, a British corporation, together with several American corporations and others, to restrain an alleged conspiracy in violation of the Anti-trust laws. Scophony, whose principal office was in London, challenged venue on the ground that it did not "transact business" and was not "found" in the Southern District of New York. The District Court, 66 F.Supp. 666 agreed and dismissed the suit. The Supreme Court reversed; not however on the ground that the mere allegation of conspiracy made Scophony's alleged co-conspirators here its agents for purposes of venue, a theory the Court did not mention, but because on the facts of record it found that Scophony, through two of its officials who were served here, had at all material times carried on in the Southern District of New York "a continuous course of business" in furtherance of a fundamental part of Scophony's corporate objectives. If in a civil anti-trust conspiracy case the situs of a foreign corporation's "ordinary commercial activities" is irrelevant to the issue of venue, as the plaintiffs contend, it is surprising that the Supreme Court gave it so much attention. Application of the plaintiffs' theory would have rendered unnecessary the Court's extensive and detailed examination of Scophony's corporate purposes and the activities of its officials here in furtherance thereof.

In Eastman the Court had to decide whether the foreign defendant had "transacted business" in Georgia within the meaning of Sec. 12 of the Clayton Act. To reach decision the Court did not rely on the mere allegations of the

---

17. 15 U.S.C.A. § 15b.

18. California Code of Civil Procedure, § 338, subd. 1.

19. Id. § 351.

complaint. On the contrary, on the evidence adduced at the District Court hearing, 234 F. 955 the Supreme Court found that Eastman, "in a continuous course of business, was engaged, not only in selling and shipping its goods to dealers within the Georgia district, but also in soliciting orders therein through its salesmen and promoting the demand for its goods through its demonstrators for the purpose of increasing its sales * * *."[20]

Finally, although the plaintiffs' contention has never been directly ruled on by the Supreme Court, it is contrary to the views only recently expressed in strong dicta in both the majority and dissenting opinions in Bankers Life & Casualty Co. v. Holland.[21] In that case, it is true, the Supreme Court decided only that mandamus was not an appropriate remedy to review the order of a District Judge in Florida severing and transferring to Georgia a treble damage suit, as to one of the defendants who was a resident and State official of Georgia. Nevertheless the Court noted the petitioner's (plaintiff's) contention that the District Judge was wrong because, since conspiracy was charged, the Georgia defendant's alleged co-conspirators in Florida were his "agents" for purposes of venue under Sec. 4 of the Clayton Act. Concerning this, Justice Clark observed in the Court's opinion: "Congress by 15 U.S.C. § 15, 15 U.S.C.A. § 15, placed definite limits on venue in treble damage actions. Certainly Congress realized in so doing that many such cases would not lie in one district as to all defendants, unless venue was waived. It must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally. Thus petitioner's theory has all the earmarks of a frivolous albeit ingenious attempt to expand the statute." Justice Frankfurter dissented in an opinion in which Justices Jackson and Minton joined.

In his view, the plaintiff's claim being "frivolous," the writ of certiorari should have been dismissed as improvidently granted. He said: "If we now had to decide whether a co-conspirator as such is an 'agent' for purposes of venue under 15 U.S.C. § 15, 15 U.S.C.A. § 15 it cannot be doubted that we would have to conclude that the district judge was right in finding that the Georgia Commissioner could not be kept in the suit."

The Motions Respecting Depositions.

These motions deal with questions of priority, limitation of examination and expenses.

Several defendants served notices to examine the plaintiffs in New York by Simon M. Lazarus and David M. Grutman who are respectively the president and vice-president of both plaintiff corporations. Subsequently the plaintiffs served notices to examine many of the defendants in New York at times earlier than those fixed for the examinations of the plaintiffs.

Nearly all of the defendants' officers whom the plaintiffs propose to examine reside and customarily perform all or most of their corporate functions at places outside of New York.

The defendants ask that the plaintiffs be required to defray the expense of bringing out-of-state officers to New York or in the alternative the expense of sending local counsel to attend the examinations, if the plaintiffs prefer to conduct them in the districts where such officers are stationed. The plaintiffs ask that they be not required to pay the defendants' expenses regardless of the place of examination, which, on that condition, the plaintiffs are willing to have the defendants select.

The plaintiffs further ask that the examination of the plaintiffs be restricted in the following respects: that at this time only Simon M. Lazarus be examined in New York; that such examination be conducted jointly by all the defendants who have served notices,

---

20. 273 U.S. at page 374, 47 S.Ct. at page 404.

21. 346 U.S. 379, 74 S.Ct. 145, 149, 98 L. Ed. 106.

and that the examination continue from day to day until completed; that David Grutman's examination be deferred until after completion of the Lazarus deposition and if then taken this be done in the first instance on written interrogatories "without prejudice" to subsequent oral examination in California if the defendants insist and agree to pay their own expenses therefor.

 The motions are disposed of as follows. The defendants who first served notices to examine the plaintiffs will be granted priority as is customary. Each defendant is entitled to and accordingly may separately conduct its own examination of the plaintiffs. However, such examinations should be scheduled so as to follow one another with reasonable promptness. The Court expects that all counsel will follow this direction and schedule the examinations accordingly.

The examination of David Grutman will not be stayed. It is to be held pursuant to the notices served.

 Most of the defendants seeking expenses have offices in New York to which their officers who are to be examined come regularly in the performance of their duties. There has been no showing of hardship on these defendants if their officers are required to come here for examination. Accordingly, whether the examinations are conducted in New York or elsewhere as the parties may agree, each party will pay its own expenses.

Orders in accordance with this opinion may be submitted on notice.

### On Motion for Reargument

The plaintiffs' motion for reargument is granted. On reargument, the defendants General Film Laboratories, Inc. and Ryder Sound Services, Inc. conceded that process in the action was, in fact, served on persons authorized to accept such service.

Accordingly the action as to these defendants will not be dismissed for lack of jurisdiction of these defendants as provided in the original opinion herein, but will be ordered transferred to the Southern District of California.

Appropriate orders are to be submitted on notice.