**GOLDLAWR, INC.,** Plaintiff-Appellant,

v.

Marcus **HEIMAN,** Select Operating Corporation and United Booking Office, Inc., Defendants-Appellees,

and

Milton Shubert, William Klein and Sylvia W. Golde, Defendants.

Nos. 27, 28, Dockets 26211, 26212.

United States Court of Appeals Second Circuit.

Argued Oct. 3, 1960.

Decided Feb. 21, 1961.

Hincks, Circuit Judge, dissented in part.

See also 25 F.R.D. 276.

Harold E. Kohn, Philadelphia, Pa. (Curtis, Mallet-Prevost, Colt & Mosle, New York City, Dolores Korman and Dilworth, Paxon, Kalish, Kohn & Dilks, Philadelphia, Pa., on the brief), for plaintiff-appellant.

Aaron Lipper, New York City (Lipper, Shinn & Keeley, and Richard B. Dannenberg, New York City, on the brief), for Morgan Guaranty Trust Co. and Asher Levy, executors of the estate of Marcus Heiman, deceased.

C. Russell Phillips, Philadelphia, Pa. (Gerald Schoenfeld, Bernard B. Jacobs, Lipper, Shinn & Keeley, New York City, Hugh G. Moulton and Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., on the brief), for defendants-appellees, Select Operating Corp., and United Booking Office, Inc.

Before HINCKS, WATERMAN and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Pursuant to leave granted by this Court (March 7, 1960; 28 U.S.C. § 1292 (b)), plaintiff, Goldlawr, Incorporated (Goldlawr), appeals from an order (January 27, 1960) dismissing the complaints in two actions filed jointly in the Southern District of New York against Select Operating Corporation (Select) and United Booking Office, Inc. (UBO) "for lack of jurisdiction over the persons of such defendants." Goldlawr also appeals from the order as to the defendant, Marcus Heiman, deceased, which dismissed for lack of personal jurisdiction and denied its motion to substitute the Executors of the Estate of Marcus Heiman as defendants.

By orders entered in the United States District Court for the Eastern District of Pennsylvania (the Pennsylvania court), these two cases against Select, UBO and certain individuals originally filed in Pennsylvania [1] were transferred "in the interest of justice" to the Southern District of New York (the New York court) "conformably to 28 U.S.C.A. § 1406(a)."[2] Thereafter, Select, UBO and four individual defendants, appearing specially, moved to dismiss for five reasons: (1) that there had been no service of process on Select or UBO subsequent to the transfer; (2) that there had been no valid service of process on Select or UBO prior to transfer; (3) that without jurisdiction over Select or UBO the Pennsylvania court had no power to order the transfer; (4) that the New York court did not acquire jurisdiction because the transfer was illegal; and (5) that the Pennsylvania court had failed to rule on the motions there made to dismiss for lack of jurisdiction.

---

1. Suit originally was instituted on October 17, 1956, in Philadelphia. Alias summonses were served on Select and UBO in New York City. A second suit was filed in Philadelphia on February 18, 1957. The order transferring both cases to New York was dated March 3, 1959. Amended complaints were thereafter served. The amended complaint in New York omitted the defendants as to whom venue had been found to be proper in Pennsylvania; the amended complaint in Pennsylvania omitted those defendants as to whom the actions had been transferred to New York.

The defendant Marcus Heiman died on September 9, 1957, after the Pennsylvania motion to dismiss had been argued but before the order of transfer had been entered.

2. § 1406. Cure or Waiver of Defects.
"(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." June 25, 1948, c. 646, § 1, 62 Stat. 937; May 24, 1949, c. 139, § 81, 63 Stat. 101.

The court below held that it "lacks personal jurisdiction over the defendants since effective service of process has never been accomplished." However, it recognized that if transfer were authorized, plaintiff might make proper service in New York, hence determination of the validity of the transfer was necessary on the theory that "if the transfer to this District were authorized, plaintiff might still be in a position to avoid dismissal by making proper service upon defendants without further delay." 175 F.Supp. 793, 796. It is appropriate therefore for the transferee court or the Court of Appeals of the transferee district to inquire into the propriety of the transfer. See Hoffman v. Blaski et al., 1960, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, by implication; Arrowhead Co., Inc. v. The Aimee Lykes, 2 Cir., 1951, 193 F.2d 83.

Goldlawr, operating a theatre in Philadelphia, sued Select, UBO, the individual defendants and others not involved in this appeal under Sections 1 [3] and 2 [4] of the Sherman Act and Sections 4 [5] and 16 [6] of the Clayton Act, alleging a conspiracy to restrain and monopolize interstate commerce, demanding treble damages and seeking an injunction against the continuance of defendants' allegedly unlawful acts.

Section 12 of the Clayton Act,[7] 15 U.S.C. § 22, 15 U.S.C.A. § 22, specifies where suit against a corporation under the antitrust laws may be brought, namely, in a district where it is an inhabitant and also where "it may be found or transacts business." Conversely, it should follow that if a corporation is not an inhabitant of, is not found in, and does not transact business in, the district, suit may not be so brought. By statutory grant if suit is brought as prescribed in this section "all process in such cases may be served in the district of which it [the corporation] is an inhabitant, or wherever it may be found." Thus, "in such cases," Congress has seen fit to enlarge the limits of the otherwise restricted territorial areas of process. In other words, the extraterritorial service privilege is given only when the other requirements are satisfied.

Upon a motion to dismiss in the Pennsylvania Court, the court held that Select and UBO were not inhabitants of the district or found or transacting business there. However, instead of ruling that therefore the suit could not be brought in the Pennsylvania district, the court, relying on Section 1406(a), 28 U.S.C., treating the motions as "Motions To Dismiss For Improper Venue," ordered the suits transferred to New York (Goldlawr, Incorporated v. Shubert, D.C. E.D.Pa.1958, 169 F.Supp. 677, 680).

The substance of the decision appealed from is that "the privilege of extraterritorial service is expressly confined to actions brought in a district in which the corporation is an inhabitant, found, or transacting business" [175 F.Supp. 796]; that these conditions have not been met and therefore personal jurisdiction was not achieved by service of the alias summonses in New York; that Section 1406(a) which "speaks to defective venue only, cannot be made to do service when there is also a jurisdictional defect"; that proper jurisdiction is a basic requirement; and that a Congressional

---

3. 15 U.S.C. § 1, 15 U.S.C.A. § 1, July 2, 1890, c. 647, § 1, 26 Stat. 209; Aug. 17, 1937, c. 690, Title VIII, 50 Stat. 693.

4. 15 U.S.C. § 2, 15 U.S.C.A. § 2, July 2, 1890, c. 647, § 2, 26 Stat. 209.

5. 15 U.S.C. § 15, 15 U.S.C.A. § 15, Oct. 15, 1914, c. 323, § 4, 38 Stat. 731.

6. 15 U.S.C. § 26, 15 U.S.C.A. § 26, Oct. 15, 1914, c. 323, § 16, 38 Stat. 737.

7. "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." Oct. 15, 1914, c. 323, § 12, 38 Stat. 736.

intent to cure jurisdictional defects cannot be found in a mere venue transfer provision. 175 F.Supp. 793, 797. Goldlawr has not here, either in the brief or on oral argument, challenged the determination that the transferor court did not have personal jurisdiction over appellees.

The motion to substitute the heirs of Marcus Heiman was denied and the cross-motion to dismiss for lack of jurisdiction was granted because no personal jurisdiction had ever been obtained as to Heiman before or after the transfer order and because of doubt that Rule 25 (a) (1), Fed.R.Civ.P., 28 U.S.C. authorized executor substitution under such circumstances.

■ It has long been established that federal courts should not assume jurisdiction to decide cases merely because it would be constitutional for Congress to have given them the jurisdiction they seek to exercise. See generally Hart and Wechsler, The Federal Courts and the Federal System, 1953, pp. 288–340. "Courts created by statute can have no jurisdiction but such as the statute confers." Sheldon v. Sill, 1850, 8 How. 441, 49 U.S. 441, 449, 12 L.Ed. 1147. Jurisdiction, over the subject matter and over the person, has been a basic concept of our jurisprudence. Athough a defendant may have full knowledge that an action has been commenced against him, a court, nevertheless, lacks jurisdiction to enter a judgment against him unless jurisdiction over his person has been obtained in strict compliance with a statute designating the method of obtaining such jurisdiction. Wuchter v. Pizzutti, 1928, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446. The balancing of competing interests which is involved in determining jurisdictional issues has been repeatedly emphasized by the Supreme Court. Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565; McDonald v. Mabee, 1917, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608; Hess v. Pawlowski, 1927, 274 U.S. 352,

47 S.Ct. 632, 71 L.Ed. 1091; Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; Mullane v. Central Hanover Bank & Trust Co., 1950, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. Because the concept of the power of a court to act and affect the rights of a party is so fundamental, jurisdiction of courts to act should be based on clear legislative pronouncements. And just as their jurisdictional authority is given to the courts by the legislature, so also must legislative limitations be expanded or removed by the same process. Section 1406(a) provides for the transfer of cases when venue is improper. It does not mention jurisdictional defects. Whatever be the desirability of a rule that a district court may transfer a case when venue is mislaid and jurisdiction over the person of the defendant is lacking, it is an unwarranted exercise of judicial interpretation to find that a statute, expressly providing for transfer to cure a venue defect, impliedly provides for a transfer to cure a more basic jurisdictional defect. The lesser does not by implication include the greater.

■■ The legislative history of Section 1406(a) indicates that the draftsmen never disclosed any belief that in promulgating a provision for transfer in the event of improper venue, they also intended their creation to make transfer possible where jurisdiction is lacking. Section 1406(a) "radically altered prior law" (Moore's Commentary on the Judicial Code, p. 195). Prior to its enactment when venue was found defective, dismissal of the action was mandatory. Camp v. Gress, 1919, 250 U.S. 308, 316, 39 S.Ct. 478, 63 L.Ed. 997; Schoen v. Mountain Producers Corp., 3 Cir., 1948, 170 F.2d 707, 713, 5 A.L.R.2d 1226. Considering the revolutionary character of the change, courts ought to demand a plain expression of the innovation and ought not extend it any further than the statutory language clearly warrants. See Robertson v. Railroad Labor Board, 1925, 268 U.S. 619, 627, 45 S.Ct.

621, 69 L.Ed. 1119; Foster Milburn Co. v. Knight, 2 Cir., 1950, 181 F.2d 949, 952. There is no indication, however, in the Congressional history behind the 1948 enactment that would suggest that the section is addressed to anything more than a venue defect.

Section 1406(a) as originally enacted required transfer when venue was improperly laid, but because it was recognized that litigants might abuse the section by purposely bringing an action in a district where venue was improper, in 1949 Congress amended the section to make transfer discretionary "in the interest of justice." The Senate Report explaining the amendment impliedly evidences a Congressional intent that a prerequisite to the operation of the section is that the court have personal jurisdiction over the parties. The report states:

> "It is thought that the provision [the 1948 version of § 1406(a)] may be subject to abuse in that plaintiff might deliberately bring a suit in a wrong division or district *where he could get service on the defendant,* and when the question of venue is raised the court is required to transfer the case to the court where it 'could have been brought.' However, in the meantime, *service has been perfected on a defendant in the wrong venue,* and it will carry over into the new (and proper) venue." [Emphasis added.] Sen. Rep. No. 303, 81st Cong., 1st Sess., U.S.Code Cong.Serv. p. 1253 (1949).

Although this statement does not explicitly address itself to a suit in the wrong district where no service can be obtained, implicitly it appears to express a Congressional recognition that section 1406(a) is to be operative only after valid "service on the defendant" giving the court personal jurisdiction.

Goldlawr takes the position that the section does not specifically require personal jurisdiction before transfer and argues that judicial ingenuity should be used to liberalize the statute by decisions that jurisdiction is not required. While it is true that Congress could have provided for the transfer in the absence of personal jurisdiction over defendants, it has not done so.

The scope of judicial authority should not be lightly extended in the absence of a clear statutory basis. While not relevant to the present appeal in its actual holding, Miner v. Atlass, 1960, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462, is nevertheless a warning that federal courts should proceed with caution when considering the merit of implying basic procedural innovations. Although a liberal transfer statute might be wise, such a change is more properly a subject for legislative action after "mature consideration of informed opinion from all relevant quarters with all the opportunities for comprehensive and integrated treatment which such consideration [legislative] affords." Miner v. Atlass, supra, 363 U.S. at page 650, 80 S.Ct. at page 1306.

Furthermore, Goldlawr concedes that under section 1404(a),[8] a legislative sibling to section 1406, "there must be jurisdiction and venue in the transferring district as well as in the district to which the case is transferred." But if jurisdiction is necessary under section 1404(a) which permits transfer for convenience of parties and witnesses so also should this requirement be met when the transfer is made for improper venue. Although the reason for the transfer is different in the two sections, they are under the same general venue heading and there is no indication whatsoever that Congress thought that it was dealing with an entirely different subject in sec-

8. § 1404 Change of venue.
"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." June 25, 1948, c. 646, 62 Stat. 937, 28 U.S.C. 1404(a).

tion 1406(a). It was merely providing for a way in which to cure a venue defect.

How has it come to pass that Section 1406(a), clear enough in its language and intent, has been now held out as authorizing transfer without personal jurisdiction?

The cases, directing transfer under section 1406(a) despite a lack of personal jurisdiction over the defendant, indicate that the view that the section authorizes transfers even in the absence of personal jurisdiction over the defendant had its genesis in a misconception of the holding of this Court in Schiller v. Mit-Clip Co., 2 Cir., 1950, 180 F.2d 654. For example, in Petroleum Financial Corp. v. Stone, D.C.S.D.N.Y.1953, 116 F.Supp. 426, the court expressed serious doubts as to the propriety of transfer under Section 1406(a) when the transferor court did not have personal jurisdiction over the defendant, but in supposed compliance with Schiller granted the transfer. Petroleum Financial Corp. v. Stone, supra, has been criticized for misconstruing Schiller. 38 Minn.L.Rev. 874 (1954). The unwarranted construction of the statute based on Schiller has gained currency by virtue of repetition. Later cases supposedly following Schiller include United States v. Welch, D.C.S.D.N.Y.1957, 151 F. Supp. 899 (citing only Schiller); Orzulak v. Federal Commerce and Navigation Co., D.C.E.D.Pa.1958, 168 F.Supp. 15 (resting in part on Petroleum Financial Corp. v. Stone, supra, an offspring of Schiller and an admiralty case, see infra); Amerio Contact Plate Freezers, Inc. v. Knowles, 1960, 107 U.S.App.D.C. 81, 274 F.2d 590 (citing Schiller and its progeny, Petroleum Finance Corp. v. Stone, supra, and United States v. Welch, supra, along with two admiralty cases, Internatio-Rotterdam, Inc. v. Thomsen,

4 Cir., 1955, 218 F.2d 514 and Orion Shipping & Trading Co. v. United States, 9 Cir., 1957, 247 F.2d 755 (in which it appears the district court had jurisdiction)).[9]

The recent pronouncement in Amerio Contact Plate Freezers, Inc., supra, that personal jurisdiction is immaterial, merely assumes the existence of such a doctrine based upon Schiller and the subsequent cases which in turn revealed no analysis supporting the conclusion. Similarly, Hayes v. Livermont, 1960, 108 U.S.App.D.C. 43, 279 F.2d 818, filed only several months after Amerio and by the same court, merely relies on that case and Internatio-Rotterdam, Inc. v. Thomsen, supra, an admiralty case.

Schiller cannot correctly be accepted, as it appears it mistakenly has been, for the proposition that section 1406(a) authorizes transfer in the absence of personal jurisdiction of a defendant. In that case the defendants moved to dismiss for lack of personal jurisdiction and improper venue. It was the court which *sua sponte* ordered the transfer. However, on appeal the plaintiff objected to the transfer and the defendant argued in support of the transfer. In assessing that case, it must be recognized that personal jurisdiction requirements are for the benefit of defendants. If a defendant chooses to waive such jurisdictional objections, he may. Thus, any learning to be derived from Schiller in regard to Section 1406(a) must be limited to cases in which the defendant may be said to have waived his right to object to the jurisdiction of the transferor court by arguing for the transfer. No such waiver of jurisdictional objections here exists.

The line of cases which have not entirely relied upon Schiller are the admiralty cases led by Internatio-Rotterdam, Inc. v. Thomsen, supra. In Inter-

9. Lumbermens Mut. Casualty Co. v. Mohr, D.C.S.D.Tex.1949, 87 F.Supp. 727, is a case in which the district court having found a jurisdictional defect nevertheless ordered a transfer under section 1406 (a). There is no recognition in the opinion of the problem raised by the jurisdictional defect.

natio-Rotterdam, the transferor court was in the Southern District of New York during the period of a series of successive misconstructions of Schiller. Furthermore, while the transferor court did not have full jurisdiction of the respondent, it did possess a type of quasi jurisdiction peculiar to libels in admiralty. In its opinion, the Fourth Circuit stressed that the Judicial Code applies to suits in admiralty (Ex parte Collett, 1948, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207), and that in admiralty cases a libel may be filed against a ship in a district in which is located a port at which the ship on the high seas is soon expected and the action is then deemed to be instituted for purposes of meeting the requirement that the action be commenced within the short one-year period of 46 U.S.C. § 1303(6), 46 U.S.C.A. § 1303(6). 218 F.2d at pages 515–516; Ore Steamship Corp. v. D/S A/S Hassel, 2 Cir., 1943, 137 F.2d 326, 329. During the period between the filing and the time the ship actually reaches port so that it may be attached and thus be subjected to jurisdiction in *in rem* proceedings, the admiralty court traditionally has had a quasi jurisdiction to enter "orders as may be appropriate with respect to the issuance or service of process." 218 F.2d at page 516. If such traditional power exists in the admiralty court, and as to that there may be serious doubt, no such tradition can be found in civil cases. Judge Parker was careful in Internatio-Rotterdam to limit his discussion to admiralty cases, and pointed out, "A suit in admiralty must be distinguished in this respect [commencement of suit] from a civil action based on diversity of citizenship in which venue is limited by statute." See 68 Harv.L.Rev. 1069 (1955). Orzulak v. Federal Commerce and Navigation Co., supra, previously considered as a case resting in part on Schiller, is also an admiralty case.

The greatest respect and deference must be accorded to the words of the late Chief Judge John Parker who would have the purpose of modern standards of procedure "to get away from time-consuming and justice-defeating technicalities" and would have "The courts of the United States comprise one great system for the administration of justice." Internatio-Rotterdam, Inc. v. Thomsen, supra, 218 F.2d at page 517. This may well be the legal Utopia in which we should be entitled to live. In "one great system" possibly there should be no restrictions upon obtaining jurisdiction throughout the system. Why should service be restricted to the State in which the district is located? Why should not service of a summons by mail anywhere in the United States be adequate? Why should service upon specified officers of corporations be necessary? And certainly the bar of a statute of limitations to a highly meritorious suit filed one day too late or the loss of the right to appeal because of a filing on the 31st day are seemingly "justice-defeating technicalities." Yet the collective wisdom of our lawmakers has both formulated and maintained these rules. From time to time liberalizing measures have been enacted as to methods of service but almost invariably after legislative deliberation. Therefore, short of some legal millennium, jurisdictional limitations are a reality.

Addressing themselves to the question of whether a district court may transfer an action under section 1406(a) when the conditions are that the court lacks jurisdiction over the person of the defendant as well as there existing a defect in venue, several judges of this circuit, along with Judge Palmieri below, have concluded that the section warrants no such construction. Independent Productions Corp. v. Loew's, Inc., D.C. S.D.N.Y.1957, 148 F.Supp. 460, 462; Fistel v. Beaver Trust Co., D.C.S.D.N.Y., 1950, 94 F.Supp. 974, 976; cf. First National Bank of Chicago v. United Air Lines, 7 Cir., 1951, 190 F.2d 493, 496, certiorari denied 341 U.S. 903, 71 S.Ct.

612, 95 L.Ed. 1342, certiorari subsequently granted 342 U.S. 875, 72 S.Ct. 168, 96 L.Ed. 658, reversed on other grounds, 1952, 342 U.S. 396, 72 S.Ct. 421, 96 L.Ed. 441.[10] Semble under 28 U.S.C. § 1404(a), Hargrove v. Louisville & Nashville Ry. Co., D.C.W.D.Ky.1957, 153 F.Supp. 681; McDaniel v. Drotman, D.C.W.D.Ky.1952, 103 F.Supp. 643; Wilson v. Kansas City So. Ry., D.C.W.D.Mo. 1951, 101 F.Supp. 56; cf. Scarmardo v. Mooring, D.C.S.D.Tex.1950, 89 F.Supp. 936; see U.Cinn.L.Rev. 357 (1954).

Goldlawr expresses the fear that if the district court here is upheld that section 1406(a) will never be applicable to corporate defendants in antitrust cases. Section 1406(a) as part of the general venue statutory provisions was not enacted to aid or impede antitrust cases. Congress eased the problem of commencing an antitrust action and of obtaining jurisdiction over defendants in a district in which venue is properly laid through the passage of section 12 of the Clayton Act. Goldlawr's real difficulty here is that it has failed to meet the requirements of that section.

The determination that section 1406 (a) does not authorize a district court to transfer a case when it merely finds venue has been improperly laid but does not have personal jurisdiction over the defendant is not at all prompted by a belief that a contrary rule would be undesirable. Convincing policy arguments can be marshalled for a more liberal transfer statute, although abuses can be imagined if the construction urged by Goldlawr were accepted, but these arguments should be made to the legislature. If after due consideration of such policies and of all competing views the broader transfer statute be thought to be desirable, a section which specifically provides for the procedural innovation might be favorably received by Congress. Any attempt by the courts to enact by their decisions so radical a procedural innovation, particularly where the effect of such decisions is to narrow the requirement of jurisdiction over the person, would invade legislative territory. See Miner v. Atlass, supra.

In passing, it is noted that even if the Pennsylvania District Court did have the authority under 28 U.S.C. § 1406(a) to transfer the case in the absence of personal jurisdiction over the defendants, as we hold it did not, the transfer might well have been defective as to defendant Heiman because he died prior to the attempted transfer and no administrator was appointed to represent him in this litigation until after the invalid transfer. See Fed.Rules of Civ. Pro. 25(a) (1); United States v. Fields, C.C.S.D.N.Y.1859, 25 Fed.Cas. No. 15,-089, p. 1067. Because the validity of the transfer as to all appellees is disposed of on other grounds, that matter need not be pursued.

As Judge Palmieri pointed out, the transferor court being unauthorized to order the transfer under section 1406 (a), the only alternatives for the transferee court are to remand the case back to the transferor or to dismiss. Since it has already been determined that venue is improper in Pennsylvania, it would be a sterile gesture to remand

10. Subsequent to the argument of this case, the Third Circuit decided Hohensee v. News Syndicate, Inc., 3 Cir., 1961, 286 F.2d 527, noted at 29 L.W. 2359. The court held that a district judge lacks the power to transfer an action under section 1406(a) when he does not have jurisdiction over the defendant. In speaking of section 1406(a) the court states:

"The sole purpose of this section as well as its companion, 28 U.S.C. § 1404, was to provide a means for curing a defect in venue whether it be improperly laid or improper because of the inconvenience of the parties. * * * We are satisfied that section 1406 was never intended to serve as a means of avoiding the consequences of a failure to perfect service of process. It would take a clear congressional mandate for this court to allow that section to be used as a shorthand method for assisting a party to effect jurisdiction of the person."

the action to be transferred back to the District Court for the Eastern District of Pennsylvania.

The judgment below is affirmed.

HINCKS, Circuit Judge (dissenting in part).

I agree with my brothers that the order below as to Heiman should be affirmed. See United States v. Fields, C.C.S.D.N.Y., 25 Fed.Cas. No. 15,089, p. 1067.

But I would hold that the transfer was proper as to Select and United, notwithstanding the absence of effective personal service on them in Pennsylvania. It was so held in Amerio Contact Plate Freezers v. Knowles, 107 U.S.App.D.C. 81, 274 F.2d 590, 591, in an opinion which was entered after the opinion below. The court there said, in speaking of such a transfer, "The court's lack of jurisdiction over the person of the defendant is immaterial." This holding was followed in Hayes v. Livermont, 108 U.S. App.D.C. 43, 279 F.2d 818. And in Internatio-Rotterdam, Inc. v. Thomsen, 4 Cir., 218 F.2d 514, 516, it was so held. To be sure, Internatio was an admiralty case and the appellees urge that its holding must be restricted to admiralty cases. I do not agree. There the power of transfer prior to any service was held to be authorized under 28 U.S.C. § 1406 (a). In speaking of a situation in which when the libel was filed neither a proper respondent nor property was within the transferor district but a vessel was expected shortly to appear, Judge Parker said:

"When suit is so instituted, which has the effect of preserving the rights of libellant against the running of the statute, and the vessel does not appear in the district as anticipated but does appear or is expected to appear in another district, it seems clearly within both the letter and the spirit of 28 U.S. C. § 1406(a) to transfer the case, in the interest of justice, as having been brought in the wrong district, since the vessel cannot be served there and must be served before the case can proceed."

Often in actions at law the situation is not significantly different. When a complaint is filed in a particular district the complications of fact and uncertainties of law may be such that the plaintiff cannot be sure that venue or service of process in the district will be sustained (much as a libelant cannot be sure that an expected vessel will arrive in the district). When after long controversy it is adjudicated that the venue is improper, as was the case here, I think "the letter and spirit of 28 U.S.C. § 1406(a)" just as in the Internatio situation requires a transfer to a district in which venue can be properly laid and the defendant can be served. The policy underlying transfers in admiralty cases is equally applicable to actions at law. As Judge Parker, in Internatio, so well said:

"Certainly such transfer is in accord with modern standards of procedure, the purpose of which is to get away from time-consuming and justice-defeating technicalities and secure an adjudication of the rights of the parties by as direct and as expeditious a route as possible. The courts of the United States comprise one great system for the administration of justice."[1]

Numerous district court decisions reach the same result. Orzulak v. Federal Commerce and Navigation Co., D.C.

[1]. I agree with the judge below and with my brothers that the decision of .this court in Schiller v. Mit-Clip, 180 F.2d 654, does not speak to the precise question now raised although other cases have given Schiller a more expansive reading. But after all, this court in Schiller, even if it did not pass upon the validity of a transfer made without personal jurisdiction, at least allowed such a transfer to stand.

E.D.Pa., 168 F.Supp. 15; United States v. Welch, D.C.S.D.N.Y., 151 F.Supp. 899; Petroleum Financial Corp. v. Stone, D.C.S.D.N.Y., 116 F.Supp. 426 (transfer under § 1404(a)); Lumbermens Mut. Cas. Co. v. Mohr, D.C.S.D.Tex., 87 F.Supp. 727; Schiller v. Mit-Clip Co., Inc., D.C.S.D.N.Y., unreported, appeal dismissed 2 Cir., 180 F.2d 654.[2]

Since the requirements which support venue under § 12 of the Clayton Act and which support amenability to service of process whereby personal jurisdiction may ordinarily be obtained are so nearly the same, the appellant argues that seldom if ever would a plaintiff be privileged to invoke § 1406(a) against a corporate defendant in a private anti-trust action if personal jurisdiction were a prerequisite. For in cases in which personal jurisdiction may be acquired by service within the district there would be no defect of venue; it is generally only when the defendant cannot be served within the district that venue would be defective. The appellees counter with the argument that under § 12 of the Clayton Act a defendant, even if not amenable to local service, may be subjected to the jurisdiction by extraterritorial service, so that personal jurisdiction may be obtained even when venue is improper. But if § 12 is available when venue is improper, the only ground upon which the appellees attack the transfer to the court below is gone. For prior to the transfer the appellant did make extraterritorial service on the appellees, as my brothers recognize.[3] The judge below, on the other hand, held that § 12 by its terms was available only in cases in which venue was proper (i. e., cases brought "not only in the judicial district whereof it [the defendant] is an inhabitant, but also in any district wherein it may be found or transacts business"). [175 F.Supp. 795]. If this interpretation of § 12 be right, there is weight in the above-stated contention of the appellant that to read into § 1406(a) of the Code a requirement of personal jurisdiction, as in effect the appellees ask us to do, would go far to nullify the liberal objective of § 1406 (a): it would then, if I may resort to an Irish bull, be available only when there was no occasion for its use. That interpretation of § 1406(a), I would think neither desirable nor required.

The appellees argue that my construction of § 1406(a) will invite its abuse. But I am not impressed by the procedural spectres which they conjure up to

2. Personal jurisdiction over the defendant was held at least by implication to be a prerequisite to a § 1406(a) transfer in Independent Productions Corp. v. Loew's, Inc., D.C.S.D.N.Y., 148 F.Supp. 460, 467. See Fistel v. Beaver Trust Co., D.C.S.D. N.Y., 94 F.Supp. 974 (unclear whether ruling based on 1406(a) or 1404(a)). Several cases have held personal jurisdiction a prerequisite to transfer under 1404(a), McDaniel v. Drotman, D.C.W. D.Ky., 103 F.Supp. 643; Hargrove v. Louisville & N. R. R., D.C.W.D.Ky., 153 F.Supp. 681; Wilson v. Kansas City So. Ry., D.C.W.D.Mo., 101 F.Supp. 56; Scarmardo v. Mooring, D.C.S.D.Tex., 89 F.Supp. 936; In re Josephson, 1 Cir., 218 F.2d 174, 185 (not "in the interests of justice" to transfer under 1404(a) before transferor court obtains personal jurisdiction).

However, since 1404(a) is the statutory articulation of the doctrine of *forum non conveniens*, these cases may be based on the historical fact that that doctrine was not applicable "if there is absence of jurisdiction," Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055. Moreover it may be noted that in 1404(a) cases the liberal objective of the doctrine will not be materially impaired by requiring personal jurisdiction as a prerequisite to transfer since in 1404(a) cases, unlike 1406(a) cases, venue is an indispensable prerequisite and hence personal jurisdiction except in occasional diversity cases can be easily obtained.

Whether personal jurisdiction is a prerequisite to transfer under 1404(a), is not now before us.

3. See majority opinion, footnote 1.

bolster this argument.[4] I do not suggest that a transfer by a court without personal jurisdiction will "cure" the jurisdictional defect; the defendants would still have to be properly served before their substantive rights could be affected. And in any event, if a plaintiff attempts to make improper use of the Act the court, "in the interests of justice," may refuse to order the transfer.

Certainly in this case no improper tactics seem to be present. The plaintiff for aught that appears had some reason for laying venue in Pennsylvania, its home state. After a substantial controversy it prevailed as to some defendants and failed as to others, including these appellees. Doubtless in bringing suits against all in Pennsylvania it was actuated by the hope of prosecuting its claim against all the defendants in one action in its home forum. There was nothing improper in that: indeed, the law frowns upon needless severance of trials and provides some flexibility to accommodate the convenience of litigants. Doubtless plaintiff was also actuated by a desire to hold the filing date of its complaint as marking the period for which damages would be recoverable: if compelled to serve the appellees anew in New York it would lose the right to recover for damages which had accrued in the earlier part of the statutory period under its original complaints. But this consideration, also, was completely consistent with its good faith: indeed, at least in the circumstances of this case, that factor might be considered as one in the interest of justice tending to support the transfer. *Per contra,* it would not have been a wise use of discretion to withhold the transfer merely to provide the appellees with immunity for part of the statutory period.

I think that considerations of procedural policy unite with the weight of precedent in support of the construction I have put on the Act. The only court of appeals decision which supports my brothers is Hohensee v. News Syndicate, referred to in footnote 10 of the majority opinion. With deference, I can only say that that case, like the opinion of my brothers herein, wholly without Congressional sanction reads into § 1406 a restriction on a salutary procedural provision which is not there. And a careful reading of its Congressional history does not suggest to me that such a restriction was intended. I would hold that the transfer was made not only legally but also in a wise exercise of discretion.

---

4. If there were substance to such spectres one would expect the appellees to refer to actual cases instead of to hypothetical cases only.