Douglas J. MICHELSON, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., Nelson Bunker Hunt,
William Herbert Hunt, Douglas Herbert
Hunt, Lamar Hunt, International Met-
als Investment Company, Ltd., John J.
Conheeney, ContiCommodity Services,
Inc., ContiCapital Management, Inc.,
ContiCapital, Ltd., Norton Waltuch, Gi-
lian Financial, ACLI International
Commodity Services, Inc., Bache Hal-
sey Stuart Shield, Inc., Shiek Mo-
hammed Aboud Al Amoudi, Shiek Ali
Bin Mussalem, Mahmoud Fustok,
Prince Faisal Bin Abdullah, Naji Rob-
ert Nahas, Banque Populaire Suisse,
Advicorp Advisory and Financial Cor-
poration S.A., Placid Oil Company,
Commodity Exchange Inc., the Chicago
Board of Trade, Irwin N. Smith, John
Does Number Two to Ten, Defendants.

No. 83 Civ. 8898(MEL).

United States District Court,
S.D. New York.

March 28, 1989.

Douglas J. Michelson, Albuquerque, N.M., pro se.

Shmuel B. Klein, Brooklyn, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants ContiCapital Management, Inc. and ContiCapital Ltd.; Richard A. Rosen, Mary Anne Case, of counsel.

Brooksley Born, Daniel Waldman, Arnold & Porter, Washington, D.C., and Gilbert, Segall & Young, New York City, for defendant Banque Populaire Suisse.

LASKER, District Judge.

This action arises out of the events of the silver market in the years 1979 and 1980. Plaintiff Douglas J. Michelson, who until August of last year appeared pro se, alleges that the defendants conspired to corner the silver market, thereby causing the price to rise to unprecedented levels and then drop precipitously and plaintiff to suffer injuries of more than one million dollars. Throughout the case, which originated in New Mexico in 1983 and was transferred to this court that same year, the adequacy of service of process and thus the existence of personal jurisdiction have been disputed.

Three of the defendants—Banque Populaire Suisse ("BPS"), a Swiss bank; ContiCapital Management, Inc. ("CCM"), a Delaware corporation doing most of its business in Illinois; and ContiCapital Limited ("CCL"), a corporation existing and doing business in the Bahamas—move to dismiss the action as to them with prejudice for lack of personal jurisdiction and ineffective service of process. BPS, CCM, and CCL originally moved for dismissal on these grounds in 1983, prior to the transfer of the case to this district; these motions were never decided and have only recently been rebriefed. Michelson now contends not only that the court has personal jurisdiction, but also that the defendants have waived their right to challenge personal jurisdiction.

## I. BACKGROUND

This action has a complicated procedural history recounted in a previous opinion, *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc*, 619 F.Supp. 727 (S.D.N.Y.1985); the attempts to effect service and the arguments as to the inadequacy of the attempts, both as to the moving defendants and others, are detailed below. In 1983, Michelson filed this action in his home state of New Mexico, alleging that the defendants had violated state laws, as well as the Commodity Exchange Act ("CEA"), the Racketeer Influenced and Corrupt Organization Act ("RICO"), and federal antitrust statutes. Numerous defendants immediately moved to dismiss the complaint for lack of personal jurisdiction and improper venue because they lacked sufficient personal or business contacts with New Mexico to bring them within the scope of its long-arm jurisdiction. On October 7 and November 10, 1983, the motions were granted.[1]

On November 15, 1983, CCL and CCM moved to dismiss the complaint with prejudice; three days later BPS filed a similar motion. CCL, CCM, and BPS all argued

---

1. The dismissed defendants included ACLI International Commodity Services, Inc., Placid Oil Co., Norton Waltuch, ContiCommodity Services, Inc., Commodity Exchange, Inc., and the Chicago Board of Trade. The motions of Nelson. Bunker Hunt, William Herbert Hunt, Douglas Herbert Hunt, and Lamar Hunt, who also moved to dismiss, were granted only with respect to the CEA and state law claims.

that they, too, lacked contact with New Mexico enabling the court to obtain personal jurisdiction. BPS also argued that the service that had been made by registered mail on the Banque in Switzerland on October 11, 1983 was ineffective because it did not conform with Swiss law, which requires that service be made through diplomatic channels. Soon thereafter, in December, 1983, the case was transferred by the New Mexico court to this district *sua sponte* pursuant to 28 U.S.C. § 1406(a). At the time of the transfer, the motions of BPS, CCL, and CCM were still pending.

At a pre-trial conference on February 3, 1984, Michelson was ordered to re-serve "all domestic United States defendants whose cases have been dismissed for lack of jurisdiction, as well as International Metals Company, Ltd., ContiCapital Ltd. and Fustok by February 25, 1984." [2] CCM contends that this ruling extended to it as well.[3]

In the fall, numerous defendants moved to dismiss on the ground that service was not sufficient; BPS, CCM, and CCL did not so move at that time. After a hearing on the motions, Michelson's time to effect service was extended until March 15, 1985 and the United States Marshals were ordered to assist him by serving copies of the summons and complaint on defendants as requested by the plaintiff.

In October, 1985, the motions of Norton Waltuch, John Conheeney, and ContiCommodity Services, Inc., all of whom had moved to dismiss the previous year, were granted and the service of process quashed. The three had not been personally served; service on the law firms representing them was held not to satisfy the requirements of the Federal Rules of Civil Procedure or New York law, in light of affidavits representing that the law firms were not authorized to receive service. *See Michelson v. Merrill Lynch, Pierce, Fen-*

*ner & Smith, Inc.,* 619 F.Supp. 727, 741–42 (S.D.N.Y.1985). Michelson's subsequent attempts to serve Conheeney and Waltuch were also held to be ineffective: He again attempted to serve Conheeney by mailing a copy of the amended complaint to his attorney. He did not serve Waltuch within 120 days after filing the amended complaint, as required by Fed.R.Civ.P. 4(j), or show good cause for the delay. Accordingly, the complaints against them were dismissed with prejudice. *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 669 F.Supp. 1244, 1266–67 (S.D.N.Y.1987).

Simultaneously, Michelson attempted to re-serve BPS, CCM, and CCL, and he confronted arguments identical to those described above as to the ineffectiveness of that service. Michelson's certificate of service of March 12, 1985 indicates that he served BPS, CCM, and CCL at the addresses of their respective counsel.[4] Soon after November 1, 1985, Michelson again attempted to serve the three moving defendants by mailing a copy of the complaint to counsel. In addition, Michelson informed the court at a hearing on January 30, 1985 and in a letter of September 29, 1987, that an attorney at Arnold & Porter, the law firm representing BPS, had told him that BPS would no longer contest jurisdiction, a representation that BPS has continually denied making.

Counsel for CCM, CCL, and BPS repeatedly advised Michelson that they were not authorized to accept service on behalf of their clients. Attorneys with Paul, Weiss, Rifkind, Wharton & Garrison ("Paul, Weiss"), counsel for CCM and CCL, so advised Michelson prior to and at the hearing of February 3, 1984, as well as on at least two subsequent occasions. Attorneys with Arnold & Porter, similarly cautioned Michelson in letters of March 19, 1985 and January 21, 1986 that they were not authorized to receive service for BPS.

---

2. Affidavit of Richard Rosen (May 16, 1988) ("Rosen Affidavit"), Exhibit E (Letter of Judge Morris E. Lasker of February 9, 1984 to all counsel in *Michelson,* confirming decisions made at the pretrial conference of February 3, 1984).

3. Rosen Affidavit at ¶ 8 ("At the February 3, 1984 hearing (which was not transcribed), this Court ordered Mr. Michelson to re-serve CCL and CCM by February 25, 1984.").

4. Rosen Affidavit, Exhibit F (Plaintiff's Certificate of Service of March 12, 1985).

4

1282

The affidavits of Richard Rosen, an attorney with Paul, Weiss, and Alexander Bennett, an attorney with Arnold & Porter, reiterate these representations. Bennett's affidavit, as well as that of BPS assistant vice president Toni Neumaus, also state that BPS did not authorize its counsel to waive its defenses of lack of personal jurisdiction or ineffective service of process, and that no attorney at Arnold & Porter represented to the contrary to Michelson.[5]

## II. DISCUSSION

There is no doubt that this court lacks jurisdiction over CCM, CCL, or BPS unless those defendants have been properly served with a summons and the complaint. *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–45, 66 S.Ct. 242, 245–46, 90 L.Ed. 185 (1946) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."); *SEC v. Gilbert*, 82 F.R.D. 723, 726 (S.D.N.Y.1979) ("[J]urisdiction attaches only when a defendant is properly served with the summons and complaint in an action."). Although the moving defendants are aware of the action, their notice of and participation in the action do not absolve the plaintiff of the responsibility to effect service in order to provide the court with personal jurisdiction.

> Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). *See also Goldlawr, Inc. v. Heiman*, 288 F.2d 579, 582 (2d Cir.1961) ("Although a defendant may have full

knowledge that an action has been commenced against him, a court, nevertheless, lacks jurisdiction to enter a judgment against him unless jurisdiction over his person has been obtained in strict compliance with a statute designating the method of obtaining such jurisdiction.") (citing *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928)), *rev'd on other grounds*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed. 2d 39 (1962).

To determine whether this court has personal jurisdiction over any of the moving defendants with respect to any of Michelson's claims, two questions must be addressed: 1) Did the New Mexico court obtain personal jurisdiction over CCL, CCM and/or BPS pursuant to the New Mexico long-arm jurisdiction statute or a federal statute providing for nationwide or extraterritorial service? 2) Did either the transfer to this court or subsequent service on CCM, CCL and BPS cure the problems of jurisdiction? These issues are addressed in turn. As a threshold matter, however, Michelson's argument that the defendants waived their right to challenge the court's jurisdiction over their persons must be addressed.

### A. Waiver
#### 1. CCL and CCM

Michelson contends that CCL and CCM have waived the defense of lack of personal jurisdiction, because they have filed a notice of appearance, opposed motions for consolidation, and joined in the motion of a codefendant to disqualify one of plaintiff's experts. Although participation of this form can constitute a waiver in certain circumstances, CCM and CCL did not, by their actions, waive their defense in the case at hand, because they promptly challenged the court's jurisdiction and their participation in this case has only followed their assertion of that defense.

Rule 12(h)(1) of the Federal Rules of Civil Procedure provides:

**5.** Affidavit of Alexander E. Bennett at ¶ 2 (April 19, 1988); Verified Statement of Toni Neumaus

at 4 (April 19, 1988).

A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g) [providing that a party may consolidate its defenses with other motions, but the party may not later make a motion based on a waivable defense if omitted from the consolidated motion], or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

There is no question in this case that CCL and CCM moved promptly under Rule 12 to assert the defense of lack of personal jurisdiction, nor does plaintiff maintain or the record reveal that CCL or CCM participated in any way in this case, other than by filing a limited and special notice of appearance for the purpose of challenging venue and jurisdiction, prior to filing their motions to dismiss for lack of personal jurisdiction.[6] Accordingly, CCL and CCM cannot be held, as Michelson argues, to have waived their defense. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 n. 1 (9th Cir.1984) (holding that filing of permissive counterclaim clearly did not constitute waiver of defense of lack of personal jurisdiction where defendant had previously filed motion to dismiss and that, even where jurisdictional challenge was asserted in same pleading as counterclaim, defense was not waived), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *Neifeld v. Steinberg*, 438 F.2d 423, 428 n. 10 (3rd Cir.1971) (holding that defendant did not waive defense of lack of personal jurisdiction by asserting it in same pleading as permissive counterclaim and stating that "[i]f [the defendant] had raised his jurisdictional defenses by motion prior to filing his answer, there would clearly have been no waiver").

The cases cited by Michelson are not to the contrary. This is not a case in which CCL and CCM can be found to have been dilatory in raising their defense and thus to have waived it, as in *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir.1983) (holding that defendant's behavior constituted waiver of the defense of lack of personal jurisdiction where defendant's attorney had attended 13 depositions and waited 4 years from the time of filing a general appearance before challenging the jurisdiction), in which they waived the defense by filing other motions first, as in *Sangdahl v. Litton*, 69 F.R.D. 641, 642–43 (S.D.N.Y.1976) (Weinfeld, J.) (defendant waived jurisdictional claim by first filing a motion for change of venue), or in which they simultaneously sought other relief that implied jurisdiction was proper, as in *527 Madison Ave. Co. v. De Loy Executive Service, Inc.*, 36 A.D. 502, 321 N.Y.S.2d 811, 813 (1971) (holding defendant waived jurisdictional defense by filing motion to consolidate), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1253, 31 L.Ed.2d 456 (1972). Nor is this a case, even assuming New York rather than federal law governed, in which the defendants have failed to move for lack of personal jurisdiction and thus can be found to have waived their defense. *Rizika v. Board of Assessors*, 62 Misc.2d 774, 310 N.Y.S.2d 43, 45–46 (1970) (denying motion to dismiss for lack of proper service where defendant had appeared and answered calendar calls prior to filing motion); *McGowan v. Bellanger*, 32 A.D.2d 293, 301 N.Y.S.2d 712, 713 (1969) (finding defendant in default, despite question whether defendant had been personally served, because defendant had appeared by examining plaintiff and appearing for her own examination); *Matter of Dell*, 56 Misc.2d 1017, 290 N.Y.S.2d 287, 290 (1968) (defendant waived challenge to service by appearing).[7]

---

**6.** This court's docket sheet does not reflect filings prior to the transfer of this case. CCL and CCM have represented, without challenge from the plaintiff, that they filed only a limited and special notice of appearance.

**7.** Not only does the New York law cited by Michelson not support his position, other New York cases flatly contradict his argument. *See, e.g., Carpet v. Walter Arnold, Inc.*, 94 A.D.2d 643, 462 N.Y.S.2d 206, 207 (1983) (holding that affirmative defense of action did not waive jurisdictional defense, where defendants sought to add counterclaim after challenging jurisdiction).

Finally, not only case law, but also logic compels the conclusion that CCM and CCL did not waive their jurisdiction defenses. Michelson's argument that participation in the case, at any time, constitutes waiver, if adopted, would compel a defendant to sit silently, even as to issues affecting its interests, while awaiting decision on the challenge to personal jurisdiction, with the possible result that jurisdiction would be found proper only after other issues in the case had been decided contrary to the defendant's interest, without the defendant's position having been heard or considered.

In sum, CCL and CCM's actions in this case have not constituted waiver; accordingly, the merits of their defense must be addressed.

## 2. BPS

In his affidavit of April 8, 1988, Michelson contends that BPS waived its jurisdictional defense because its counsel advised him that it would not pursue the motion to dismiss in light of the transfer to New York.[8] As the background section of this opinion states, counsel for BPS denies ever having made such a representation.

On a question as important as jurisdiction, I decline to find that BPS has waived this defense when confronted with its affidavit to the contrary. BPS's motion to dismiss for lack of jurisdiction has been pending since 1983, with no indication that it has been resolved or withdrawn.

### B. New Mexico Court Jurisdiction

Rule 4(e) of the Federal Rules of Civil Procedure provides for service upon a party that is not an inhabitant of the state in which the district court is held in the manner authorized by a federal statute under which a claim arises—if the statute so provides—or in the manner specified in the state's long-arm statute. Thus, to determine whether the New Mexico district had personal jurisdiction over BPS, CCL, or CCM, none of which were inhabitants of New Mexico, the reach of both the New Mexico long-arm statute and the federal statutes providing for nationwide or extra-territorial service of process, in this case RICO and the Clayton Act, must be considered. I conclude that none of these statutes permitted the New Mexico court to obtain personal jurisdiction over the moving defendants.

### 1. Jurisdiction under the New Mexico Long–Arm Statute and CEA

■ It is clear from a review of the moving papers filed by CCL, CCM, and BPS in New Mexico, as well as the two decisions granting the motions of other defendants to dismiss for lack of personal jurisdiction and improper venue, that the New Mexico court lacked personal jurisdiction over CCL, CCM, and BPS under the state long-arm statute. The New Mexico long-arm statute governed the scope of personal jurisdiction for claims arising under New Mexico state statutes, as well as those arising under the CEA. *Omni Capital International v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 411, 98 L.Ed.2d 415 (1987) (nationwide service provision is not implicit in the CEA); applicable state long-arm statute governs service of summons). *See also C. & S. Associates, Inc. v. Hu*, [1977–80 Transfer Binder] Com.Fut.L.Rep. (CCH) ¶ 20,518 (S.D.N.Y.1977) (granting motion to dismiss CEA claim for lack of personal jurisdiction where provisions of long-arm statute in state in which the district was located were not satisfied).

Defendant CCL is a corporation existing under the laws of and with its principal place of business in the Bahamas. Defendant CCM, a Delaware corporation, offers commodity trading advisory services to its clients, with its principal place of business being Chicago, Illinois. Defendant BPS is a banking organization established under the laws of Switzerland with offices in Switzerland. The affidavits of each defendant specify that it has had no business relationship with the plaintiff and that it has no office, no personnel, no assets, and has not conducted business in New Mexico. Moreover, BPS has no offices, agents, or real property in the United States, nor had it advertised, held meetings, or been licensed to do business in the United States.

---

**8.** Affidavit of D.J. Michelson at ¶ 8 (April 8, 1988).

The complaint did not allege, as was required by the New Mexico long-arm statute, that CCL, CCM, or BPS "are citizens of New Mexico, carry on business in New Mexico, or have engaged in any conduct whatever in New Mexico." *Michelson v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, No. 81–1099 (D.N.M. Nov. 10, 1983). Nor, in light of the defendants' representations, could plaintiff establish that the requirements of the New Mexico long-arm statute were satisfied. Accordingly, the New Mexico court lacked personal jurisdiction over CCL, CCM, and BPS on the claims arising under the New Mexico statutes and the CEA.

### 2. Jurisdiction under RICO

The RICO venue and process provisions, 18 U.S.C. § 1965(a) and 18 U.S.C. § 1965(d) respectively, state:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
>
> \* \* \* \* \* \*
>
> (d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

Section 1965(d) has been construed to authorize nationwide service of process, *see Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1055 (S.D.N.Y.1987) and cases cited therein, thereby making the court's jurisdiction "coextensive with the boundaries of the United States," *FTC v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir.1981). *See also Rolls–Royce Motors*, 657 F.Supp. at 1055 (adopting analysis of *FTC* for RICO).

■ Despite the broad scope of service permissible under § 1965(d), it has been construed not to provide for international service. *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 590 F.Supp. 1453, 1460 (E.D. N.Y.1984) (dismissing counterclaims against Belgian individual and corporate defendants because there was no valid method of service under federal statute; "[a]lthough RICO authorizes nationwide service of process, ... it does not, by its very language, authorize service in a foreign country"), *aff'd*, 832 F.2d 1325 (2d Cir.1987). *See also North Carolina Ex rel. Long v. Alexander & Alexander Serv., Inc.*, 680 F.Supp. 746, 749 (E.D.N.C.1988) (holding court could not exercise personal jurisdiction pursuant to § 1965(b) because "the federal RICO statute does not provide for service on foreign defendants"); *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 564 (S.D.N.Y.1985) (holding court could not exercise personal jurisdiction over foreign parties because the language of § 1965(b) does not authorize service in a foreign country; "[s]ince effective service is a prerequisite to the exercise of jurisdiction, any foreign party against whom a RICO claim is asserted must be served with process in this country"); *Compare with Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir.1972) (holding that § 27 of the Securities Exchange Act, which permits "process ... in any other district of which the defendant is an inhabitant or wherever the defendant may be found," provides for personal jurisdiction over foreigners not present in the United States because "use of the word 'wherever', rather than 'where' or 'in which', demonstrates an intention to authorize service on a defendant who can be 'found' only in a foreign country"). Plaintiff has cited and the court can find no case holding to the contrary. Accordingly, because BPS and CCL were not served in this country, but were only served by mail in Switzerland and the Bahamas respectively, valid service of process was not made under RICO. Therefore, the New Mexico court did not acquire personal jurisdiction over CCL and BPS on the RICO claim.

■ For different reasons, the New Mexico court also lacked jurisdiction over CCM on the RICO claim. CCM, a domestic corporation, was served by mail at its corporate headquarters in Delaware and thus is within the reach of the nationwide service authorized by the RICO statute. How-

ever, because the venue provision of § 1965(a) was not satisfied, the expansive service provision of RICO was not available to Michelson and could not confer personal jurisdiction over CCM. *Damiani v. Adams*, 657 F.Supp. 1409, 1416 (S.D.Cal. 1987) (granting motions to dismiss for lack of personal jurisdiction and improper venue where § 1965(a) not satisfied). *See also Van Schaick v. Church of Scientology of California, Inc.*, 535 F.Supp. 1125, 1133 (D.Mass.1982) (granting church's motion to dismiss for lack of personal jurisdiction and venue because conspiracy theory did not provide personal jurisdiction absent connection between defendant and acts within the state and because venue was improper under both 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)).

Venue did not properly lie in the New Mexico district court because CCM neither "resides, is found, has an agent, [nor] transacts [its] affairs" in New Mexico, as required by § 1965(a). Nor was venue proper pursuant to 28 U.S.C. § 1391(b), consideration of which is not excluded by the venue provision of § 1965. *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. at 1058 (venue provision of RICO supplements general venue statute); *Miller Brewing Co. v. Landau*, 616 F.Supp. 1285, 1291 (E.D.Wis.1985) (RICO venue provision supplements rather than exclude venue provision of § 1391); *Van Schaick v. Church of Scientology of California, Inc.*, 535 F.Supp. at 1133 n. 6 (because § 1965 is intended to liberalize venue provisions, it is appropriate to inquire whether venue is proper under 28 U.S.C. § 1391(b) if § 1965 is not satisfied). CCM cannot be said to have resided in New Mexico nor did Michelson's claims against it arise there within the meaning of § 1391. Accordingly, the New Mexico district court lacked personal jurisdiction over CCM on the RICO claim.

3. Jurisdiction Under the Clayton Act

■ Like § 1965(a) of the RICO statute, § 12 of the Clayton Act, 15 U.S.C. § 22, provides for expansive service of process.

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Although § 12 provides for extraterritorial service of process, it has been construed to authorize personal jurisdiction over a defendant only in districts in which the defendant is found, is an inhabitant, or transacts business—in other words, only when the venue requirements of § 12 have been satisfied.

By the phrase "all process *in such cases*" (emphasis supplied), the privilege of extraterritorial service is expressly confined to actions brought in a district in which the corporation is an inhabitant, found, or transacting business.

*Goldlawr, Inc. v. Shubert*, 175 F.Supp. 793, 796 (S.D.N.Y.1959) (citations omitted), *aff'd, Goldlawr, Inc. v. Heiman*, 288 F.2d 579 (2d Cir.1961), *rev'd on other grounds*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). The district court in *Goldlawr* expressly rejected the argument that the Clayton Act's extraterritorial service provision provided the transferor and transferee court with personal jurisdiction, where venue was improper in the transferor court. The court of appeals similarly declined to read the clause dealing with process as independent of the clause specifying the requirements for venue. The court of appeals, affirming the decision below, stated that the language, "in such cases," indicated that "the extraterritorial service privilege is given only when the other requirements are satisfied." *Goldlawr, Inc. v. Heiman*, 288 F.2d at 581. *See also Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182, 1195 (D.D.C.1984) ("[s]ection 12 essentially is a long-arm statute which permits service of process in a non-forum district, so long as the venue provision is met"); *Gault v. Foster*, No. 83–1688 (N.D. Ill. Sept. 14, 1984) (analyzing comparable provisions of federal securities law, 15 U.S. C. §§ 77v and 78aa, and holding that statute authorized worldwide service of process only when venue was proper within

the meaning of the securities law); Hovenkamp, *Personal Jurisdiction and Venue in Private Antitrust Actions in Federal Courts: A Policy Analysis*, 67 Iowa L.Rev. 485, 509 (1982) (arguing that § 12 should be interpreted as it is written: to authorize worldwide service only when the action falls within § 12's venue requirements). By this standard, the New Mexico court acquired personal jurisdiction over none of the moving defendants, as CCM, CCL, and BPS were not inhabitants of New Mexico, nor were any of them found or transacting business in New Mexico.

However, at least one court has adopted a theory pursuant to which the New Mexico district court could be held to have acquired personal jurisdiction over CCL and BPS for the Clayton Act claim.[9] To hold that the New Mexico court had jurisdiction over CCL and BPS, one must conclude, as did the court in *General Elec. Co. v. Bucyrus–Erie Co.*, 550 F.Supp. 1037 (S.D.N.Y. 1982) (Stewart, J.): first, that the venue provision of § 1391(d), providing that "[a]n alien may be sued in any district," supplements the venue provision of § 12; second, that the extraterritorial service provision of § 12 may be invoked if the requirements of § 1391(d), but not § 12, are satisfied; and third, that due process only requires that the defendant have sufficient contact with the United States, rather than with the district of New Mexico. The analysis of *Bucyrus* need not be restated: It presents a clear, concise, and compelling argument in support of the proposition that any district may acquire personal jurisdiction, pursuant to § 12, over an alien who is alleged to have acted in violation of the antitrust law, provided the alien has been served and has sufficient contacts with this country to ensure due process. Little can be said to contribute to the analysis of *Bucyrus*, and little has been put forward to detract from its force. *See, e.g., Gault v. Foster*, No. 83–1688 (N.D.Ill. Sept. 14, 1984) (rejecting *Bucyrus* based on its analysis of *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), which

it construed to hold implicitly that worldwide service of process was contingent on satisfaction of venue requirements of § 27 of the federal securities law, the construction of which parallels § 12).

Although *Bucyrus* presents a strong and persuasive argument in favor of finding that the New Mexico court, and thus this court, acquired personal jurisdiction over CCL and BPS on the claim arising under § 12 of the Clayton Act, the construction of the statute of this circuit in *Goldlawr* and of other courts and commentators cited above give reason to believe that the court of appeals might conclude differently. It may well hold, contrary to *Bucyrus*, that the phrase "all process in such cases" of § 12 limits extraterritorial service to actions in which the venue provisions of § 12 are satisfied, namely those actions brought in a district in which the corporation is an inhabitant, found, or transacting business, regardless of whether the corporation is domestic or foreign. If jurisdiction over CCL and BPS does not lie, the trial of this case, which is likely to be prolonged and complicated, would impose an unjustifiable and arduous burden on these defendants. Accordingly, in light of the precedent indicating that the court of appeals may reach a result contrary to that of *Bucyrus*, I conclude that the better course is to grant the motion to dismiss the complaint against CCL and BPS, as well as CCM.

\* \* \* \* \* \*

In sum, I conclude that the New Mexico court lacked personal jurisdiction over CCM, CCL, and BPS on all of the claims alleged, including those arising under the statutes of New Mexico, CEA, RICO, and Clayton Act.

### C. Effect Of Transfer

Soon after granting the motions of numerous defendants to dismiss for lack of personal jurisdiction, the New Mexico court *sua sponte* transferred the case to New

---

**9.** There is no theory pursuant to which the New Mexico court acquired personal jurisdiction over CCM for the Clayton Act claim.

**1288**

York pursuant to 28 U.S.C. § 1406(a), which states:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Transfer is favored to remove procedural obstacles, including "the lack of personal jurisdiction, improper venue and statute of limitations bars" and thus to permit adjudication on the merits. *Sinclair v. Kleindienst,* 711 F.2d 291, 294 (D.C.Cir.1983).

■ However, the transfer only makes personal jurisdiction in the new district possible; the mere action of transferring the case does not confer upon the transferee court personal jurisdiction. *Sinclair,* 711 F.2d at 294 ("While this district court does not have personal jurisdiction over the defendants, it appears likely that personal jurisdiction could be obtained in [the transferee court]."); *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 80 (2d Cir. 1978) (holding that court had the power to transfer the case although it lacked personal jurisdiction over all of the defendants and finding such transfer to be in the interest of justice, in part because "transfer would apparently enable appellant to obtain personal jurisdiction over some or all of the defendants"); *Goldlawr, Inc. v. Shubert,* 175 F.Supp. at 796 (court in which case originally filed "never acquired personal jurisdiction over the defendants, and this Court did not acquire personal jurisdiction as a result of the transfer [pursuant to § 1406(a) ]"). *Cf. Cunningham v. Subaru of America, Inc.,* 631 F.Supp. 132, 137 (D.Kan.1986) (denying plaintiff's motion to amend service of process on the ground that the proper remedy upon transfer from a court lacking personal jurisdiction to one having jurisdiction is to quash service of process and give plaintiff time to re-serve the defendant).

■ Thus, the transferee court apparently acquires personal jurisdiction if, upon transfer, the plaintiff serves (or re-serves) those defendants over whom the original court lacked personal jurisdiction.

While this Court does not understand that the act of transfer, *in and of itself,* might cure any defect in service or cause previously unperfected personal jurisdiction to attach, it does believe that such problems can be readily resolved *after transfer* by an Order directing that the defendant be properly served under the law in the transferee forum. . . .

*Stewart Coach Indus., Inc. v. Moore,* 512 F.Supp. 879, 883–84 (S.D.Ohio 1981) (emphasis in the original). *See also Rixner v. White,* 417 F.Supp. 995, 997 (D.N.D.1976) (stating in dicta that plaintiff must affirmatively show that transferee court has acquired personal jurisdiction and suggesting that new service must be made in cases transferred under § 1406(a)); *Lozano v. Civiletti,* 89 F.R.D. 475, 480 (D.D.C.1980) (proper remedy if transferor court lacks personal jurisdiction is not to dismiss, but is "to effect personal service after the action is transferred").

However, at least one court has held that, although re-service upon transfer from a court lacking personal jurisdiction is preferable, it is not required. In *Bentz v. Recile,* 778 F.2d 1026, 1028–29 n. 5 (5th Cir.1985), the court of appeals affirmed denial of the defendant's motion to dismiss, for lack of personal jurisdiction where the federal district court in Mississippi from which the case was transferred never acquired personal jurisdiction. The court emphasized that, because the defendants were served under the Mississippi long-arm statute, they had "received all the notice service of process is designed to give." *Id.* The court concluded that a remand to the district court to allow re-service would be a "useless act and a waste of judicial resources," a conclusion that made particular sense in light of the court's affirmance of the decision below granting plaintiff's motion for summary judgment. *Id.*

The *Bentz* approach is sensible and appealing: The function of service is satisfied in that the defendants receive notice, if served, even if the original venue was improper. By allowing personal jurisdiction to attach simply by transfer to a proper venue, without re-service, the *Bentz* ap-

proach eliminates the procedural obstacles that frustrate plaintiffs with no apparent detriment to defendants. However, I decline in this case to forego the "better practice" of requiring re-service for three reasons. First, this is not a case, as was *Bentz*, in which re-service would only tidy a case and require another appeal, simply to affirm an award of summary judgment. In the case at hand, re-service may be useful to ensure that the court has acquired personal jurisdiction for the protracted litigation that may follow. Second, this holding is consistent with the court's approach to this case in the past: Plaintiff has already been ordered to re-serve the majority of defendants in this case, including CCL, and he has attempted to re-serve all three moving defendants. Third and most important, I decline to follow *Bentz* in this case because the application of *Bentz* would require denial of defendants' motion to dismiss with the possible result that defendants' appeal of this novel approach would only be heard after conclusion of this litigation, which may be several years from now. I decline, absent guidance from this circuit, to adopt a novel yet sensible theory of law that may have such consequences for the moving defendants.[10] Accordingly, I find that the transfer of this case from New Mexico to New York, alone, did not cure the defect in personal jurisdiction with respect to CCL, CCM, and BPS.

However, not only did the transfer fail to cure the defect in personal jurisdiction, but Michelson's attempts to re-serve CCL, CCM, and BPS were not effective. Service upon Paul, Weiss, counsel for CCL and CCM, and upon Arnold & Porter, counsel for BPS, do not satisfy the requirements of the Federal Rules of Civil Procedure or New York state law.[11]  *See Michelson I,* 619 F.Supp. at 742 (holding that attempt to re-serve defendant "through his law firm fails to satisfy the requirements of Federal Rule of Civil Procedure 4 or New York law, which is governed by CPLR § 308"); *Gibbs v. Hawaiian Eugenia Corp.,* 581 F.Supp. 1269, 1271 (S.D.N.Y.1984) (service on law firm insufficient to confer personal jurisdiction where firm not authorized agent). The affidavits of Rosen, Bennett, and Neumaus establish that neither the individual lawyers nor their firms were agents "authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(d)(3). As the facts discussed above reveal, Michelson was repeatedly told by counsel that service upon them was ineffective.

Thus, because the New Mexico court lacked personal jurisdiction over CCL, CCM, or BPS on any of the claims and that defect was not cured by transfer or re-service, the motions to dismiss must be granted. Although service on these defendants has not previously been quashed, Michelson has been ordered to re-serve CCL and has attempted on several occasions to re-serve all three of these defendants. He has repeatedly been advised of the defects in service by counsel, as well as by the court of comparable flaws in attempts to re-serve other defendants. *See Michelson I,* 619 F.Supp. at 741–42; *Michelson II,* 669 F.Supp. at 1266–67. In light of this history, the complaint against CCL, CCM and BPS is dismissed with prejudice.[12]

\*    \*    \*    \*    \*    \*

In conclusion, I find that the New Mexico court lacked jurisdiction over CCL, CCM, and BPS on all the claims and that neither the transfer nor the attempts to re-serve these defendants cured these defects.[13]  In

---

**10.** Even with adoption of the *Bentz* approach, this court might lack jurisdiction over BPS, because it argues as well that service of process as to it was ineffective.

**11.** Because I find that service was ineffective, it is not necessary to address the additional argument of CCL and CCM that plaintiff's later attempts at service also failed to conform to the requirement of the Federal Rules of Civil Procedure that the complaint be accompanied with a summons, notice, acknowledgment form and return envelope.

**12.** It may not matter whether the claim is dismissed with or without prejudice for the statute of limitations may very well have run.

**13.** In light of this conclusion, I need not consider BPS's argument that the original service of process was ineffective because, although the service upon it by mail may have conformed to Fed.R.Civ.P. 4(i), it did not comply with Swiss law.  *See R.M.B. Electrostat, Inc. v. Letra Trading, AG, et al,* No. 82–1844, 1983 WL 13711 (E.D.Pa.1983) (dismissing complaint against Swiss corporation where service by mail did not

reaching these conclusions, particularly as to the question of jurisdiction over CCL and BPS under the CEA claim and as to the need to re-serve the defendants, there is very persuasive authority to the contrary. Confronted with a split of authority and strong arguments for both plaintiff and defendants on several points, practical considerations tilt the balance in favor of granting defendants' motion to dismiss, for only dismissal will ensure prompt consideration and resolution of the questions presented by this motion. Fairness dictates that in a close case defendants not be kept in the case with the risk that they will successfully appeal, but only after several more years of litigation.

The motions of CCL, CCM and BPS to dismiss for lack of personal jurisdiction are granted. The complaint as to these defendants is dismissed with prejudice. Because this decision disposes of all claims against these three defendants and there is no just cause for delay, judgment for CCL, CCM, and BPS shall be entered at this time in accordance with Rule 54 of the Federal Rules of Civil Procedure. Judgment at this time promotes judicial economy and is compelled by considerations of fairness to the parties, because, by permitting a appeal of this decision prior to trial of this action, the Rule 54(b) judgment could obviate the need for a second trial, were this decision reversed.

Submit judgment on notice.

comport with international law; emphasizing that directive of Administrative Office of the United States Courts indicated Switzerland's objection to service by mail); *Hudson v. Capital Management Int'l Inc.,* [1982–83] Fed.Sec.L.Rep. (CCH) ¶ 99,221, 1982 WL 1384 (N.D.Cal.1982)

(granting Swiss bank's motion to dismiss for improper service of process where defendant was served by mail in violation of Swiss law and emphasizing that there was no need to circumvent diplomatic channels given possible foreign relations impact).