**PAPER SYSTEMS INCORPORATED, Plaintiff,**

v.

**MITSUBISHI CORPORATION; Mitsubishi International Corporation; Mitsubishi Paper Mills Ltd.; Elof Hansson Paper & Board, Inc.; Kanzaki Specialty Papers; New Oji Paper Co., Ltd.; and Nippon Paper Industries, Co., Ltd.; Defendants.**

**Civil Action No. 96–C–0959.**

United States District Court,
E.D. Wisconsin.

June 19, 1997.

Beth J. Kushner, Von Briesen, Purtell & Roper S.C., Milwaukee, WI, Michael D. Hausfeld, Daniel A. Small, Sharon A. Snyder, Victoria C. Arthaud, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Howard J. Sedran, Donald E. Haviland, Jr., Levin Fishbein Sedran & Berman, Philadelphia, PA, for Plaintiff.

Howard Pollack, James G. Schweitzer, Godfrey & Kahn, Milwaukee, WI, Richard E. Donovan, Mark S. Gregory, Kelley Drye & Warren L.L.P., New York City, for Defendants Kanzaki & Oji Paper.

Frank W. Doster, Arnstein & Lehr, Milwaukee, WI, Stanley M. Lipnick, David B. Goodman, George P. Apostolides, Arnstein & Lehr, Chicago, IL, for Defendant Elof Hansson.

Robert H. Friebert, Brian R. Smigelski, Friebert, Finerty & St. John, Milwaukee, WI, Jerold S. Solovy, Jenner & Block, Chicago, IL, for Defendant Mitsubishi Paper Mills.

Thomas M. Pyper, Whyte Hirschboeck Dudek, S.C., Madison, WI, for Defendants Mitsubishi Corp. and Int'l Corp.

David J. Cannon, Michael Best & Friedrich, Milwaukee, WI, Richard G. Parker, O'Melveny & Myers L.L.P., Washington, DC, for Defendant Nippon Cannon.

## DECISION AND ORDER DENYING MOTIONS TO DISMISS

REYNOLDS, District Judge.

Paper Systems Incorporated ("Paper Systems") is suing the defendants for violations of section one of the Sherman Act, 15 U.S.C. § 1. Allegedly, the defendants conspired to fix the price of thermal fax paper. Two of the defendants Nippon Paper Industries, Co., Ltd. ("Nippon"), and New Oji Paper Company Ltd., ("Oji"), have moved to dismiss the complaint for lack of personal jurisdiction; both are alien corporations. *See* Fed. R.Civ.P. 12(b)(1). In the alternative, Oji asks the court to transfer the case to the Western District of Washington. The court denies the motions to dismiss and the motion to transfer. This court has jurisdiction over Nippon and Oji because Paper Systems can rely on 15 U.S.C. § 22 for service of process

and because Nippon and Oji have substantial contacts with the United States. Transferring the case is inappropriate because Oji has not shown that the Western District of Washington is a more convenient forum than the Eastern District of Wisconsin.

As a preliminary matter, Paper Systems moved to file a sur-reply brief. Antitrust actions are often complicated with all parties wishing to have the last word. A sur-reply leads to a sur-sur-reply. The amount of paper filed in an antitrust action is large enough without extra briefs. The court denies the motion to file a sur-reply brief.

The facts for the dismissal motion are simple. Paper Systems admits that it cannot satisfy any of the Wisconsin Long Arm Statutes and that neither of the defendants have substantial contacts with the State of Wisconsin.[1] In the District Court of Massachusetts, Nippon was a defendant in a criminal antitrust action involving a thermal fax price-fixing scheme. After Nippon moved to dismiss for lack of personal jurisdiction, the District Court of Massachusetts denied the motion, finding that service was proper under Fed.R.Crim.P. 4 and that Nippon has sufficient contacts with the United States of America to satisfy any due process concerns. Oji has not argued that it lacks substantial contacts with the United States of America.

■ As a preliminary to any action, a court must have subject matter jurisdiction (which no one disputes) and personal jurisdiction over the parties. In addition, the district in which the case is filed must be the proper venue for the action. A court has personal jurisdiction over a defendant if the plaintiff has properly served the defendant and if the defendant has sufficient contacts with the forum to satisfy procedural due process protections. *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 279, 283 (7th Cir.1990). Rule 4 of the Federal Rules of

Civil Procedure defines when service of process establishes personal jurisdiction over a defendant. If the plaintiff relies on a federal service of process statute, service establishes jurisdiction. Fed.R.Civ.P. 4(k)(1)(D). Many federal statutes, however, lack a service of process provision; in those cases, service establishes jurisdiction over the defendant if the defendant "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed.R.Civ.P. 4(k)(1)(A).

## I. Service of Process

Under 15 U.S.C. § 22:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process *in such cases* may be served in the district of which it is an inhabitant, or wherever it may be found.

(emphasis added). Although Paper Systems relies on 15 U.S.C. § 22 for establishing jurisdiction over the defendants, Nippon and Oji argue that Paper Systems can use 15 U.S.C. § 22's service of process clause only if Paper Systems has satisfied § 22's venue clause. Because Paper Systems can not satisfy § 22's venue clause, and because a Wisconsin court would not have jurisdiction over Nippon or Oji, Nippon and Oji conclude that this court would lack jurisdiction over them. The statute's language is ambiguous. Neither the legislative history nor the case law is dispositive.

■ Nevertheless, the answer is clear. When, as here, the underlying substantive law suggests worldwide service and when, as here, the law provides for worldwide service of process and when, as here, nothing in the legislative history implies reading a venue provision as a jurisdictional limitation, the

---

**1.** In a footnote to its response to Oji's motion, Paper Systems suggests that this court adopt a co-conspirator theory of venue. (Mem. in Opp. to Oji's Mot. to Dismiss at 5–6, n. 5.) The court assumes Paper Systems means a co-conspirator theory of personal jurisdiction. Regardless, Wisconsin has not ruled on whether plaintiffs can use one conspirator's actions to obtain jurisdic-

tion over another conspirator. *See Stauffacher v. Bennett,* 969 F.2d 455, 460 (7th Cir.), *cert. denied,* 506 U.S. 1034, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992). Paper Systems' passing reference to the co-conspirator theory is an insufficient basis for this court to expand Wisconsin's long arm statute.

worldwide service of process clause should stand on its own, independent from the venue clause. Paper Systems may rely on § 22's service of process provision without satisfying § 22's venue provisions. Instead, Paper Systems may rely on 28 U.S.C. § 1391(d) for venue, which states "an alien may be sued in any district."

The problem turns on the phrase "in such cases." In Paper Systems' view, "in such cases" refers to "any suit, action, or proceeding under the antitrust laws against a corporation." As a result, an antitrust plaintiff can always use § 22's service of process provision. In Nippon and Oji's view, "in such cases" refers to antitrust cases against corporations brought in any district that the corporation inhabits, where it is found, or in which it transacts business; only antitrust plaintiffs satisfying the venue provision can use the service of process provision.

█ When interpreting a statute, the court looks first to the language itself. Contrary to Nippon and Oji's view, "in such cases" is either ambiguous or refers to cases brought under the antitrust laws. "Such" refers to a noun and the words, phrases, and clauses modifying that noun; it does not refer to an independent clause. *Bucyrus–Erie*, 550 F.Supp. at 1042 n. 7 (*citing* Webster's Third International Dictionary (unabr. ed.1963); *see also Go–Video v. Akai Elec. Co.* 885 F.2d 1406, 1412 (9th Cir.1989), (*citing Bucyrus–Erie*); *see also* H.W. Fowler, A Dictionary of Modern English Usage 602 (2nd ed.1965)). In other words, "such" refers to "Any suit, action, or proceeding under the antitrust laws against a corporation" (nouns modified by two prepositional phrases).

Although strict application of the rules of grammar refutes Oji and Nippon's plain meaning argument,[2] it does not resolve the issue in Paper Systems's favor. Any time a court must refer to obscure rules of grammar, the statute has no plain meaning. Judges—not grammarians—interpret the law, and slavish devotion to grammar may hide the real reason for the decision.

Neither the legislative history nor Supreme Court decisions suggest that § 22's venue clause is supposed to serve a second purpose: a limitation on personal jurisdiction. The legislative history is silent. *Go–Video, Inc.*, 885 F.2d at 1410–11. In interpreting similar language in different statutes, the Supreme Court has refused to read a jurisdictional requirement into a venue statute. In *Panama R. Co. v. Johnson*, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924), the Court interpreted 46 U.S.C.App. § 688, which provides "Jurisdiction in such actions [under the Jones Act] shall be under the court of the district in which the defendant employer resides or in which his principal office is located." Despite the reference to jurisdiction, the Court treated it as a venue statute with no implication for jurisdiction. *Id.* at 378.

Courts have split in interpreting this statute with more recent cases siding with the plaintiff. *Compare Goldlawr, Inc. v. Heiman*, 288 F.2d 579 (2nd Cir.1961) (must satisfy venue clause to use service clause), *rev'd on other grounds*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Frederick Cinema Corp. v. Interstate Theatres Corp.*, 413 F.Supp. 840 (D.D.C.1976) *and* cases cited in footnote 2, *supra with Go–Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir.1989) (service and venue clauses are independent of one another); *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F.Supp. 375 (W.D.La. 1996); *Miller Pipeline Corp. v. British Gas plc*, 901 F.Supp. 1416 (S.D.Ind.1995) *and General Elec. Co. v. Bucyrus–Erie Co.*, 550 F.Supp. 1037 (S.D.N.Y.1982); *but see Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.Supp. 1279 (S.D.N.Y.1989) (relying on *Goldlawr* despite showing sympathy with *Bucyrus–Erie*). Nippon and Oji argue that the majority of courts who addressed the issue have decided it in their favor. Most of the cases, however, give no explanation for their position, or they cite other cases that also provide no explanation. *See e.g., United Phosphorus, Ltd. v. Angus Chem. Co.*, 1996 WL 164394 (N.D.Ill. Mar. 28, 1996); *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182 (D.D.C.1984); *Weinstein v. Norman M. Morris Corp.*, 432 F.Supp. 337, 341–42 (E.D.Mich.1977). *Go–*

---

2. Because Nippon and Oji rely primarily on the plain meaning argument, however, the court's rejection of it leaves little basis for ruling in their favor.

*Video* overruled *Cascade Steel Rolling Mills, Inc. v. C. Itoh & Co. (America) Inc.,* 499 F.Supp. 829 (D.Or.1980). One court sided with the defendants' view only because it felt bound by the Second Circuit. *See Michelson,* 709 F.Supp. at 1289. Although Oji cites *Thill Sec. Corp. v. New York Stock Exch.,* 283 F.Supp. 239 (E.D.Wis.1968), for support, this court in *Thill* ruled that § 22 applies only to corporations. Moreover, dicta in that decision suggests that the venue and service clauses were not interdependent. *Id.* at 242. Especially because of the historical aspects of the statute and the lack of explanation, these cases are unpersuasive.

Personal jurisdiction defines a court's power; if § 22 provides for worldwide service without exception, Congress has extended the federal courts' powers to their constitutional limit to enforce the antitrust laws. Perhaps more than any other law, the antitrust laws are national in scope and impact. The antitrust laws define the rules of the free market economy; like the weather, the economy respects no state or natural borders. Goods made in Oregon may be bought in Wisconsin or Japan. Competitors may locate in all corners of the country; yet, even in their absence from one state, their activities will profoundly affect consumers in that state. If Oji and Nippon conspired to fix prices with others who did sell fax paper in Wisconsin, Nippon and Oji's participation insured that Wisconsin consumers could not look elsewhere for a better price.

Moreover, antitrust cases, especially those involving aliens, may pose problems for any one district court to obtain jurisdiction over all the defendants, if left to state long arm statutes. For example, defendant 1 is an alien that transacts business only in California; defendant 2 is an alien that transacts business only in New York; and the other defendants transact business in all fifty states. Under Nippon and Oji's theory, a plaintiff in Wisconsin would have to litigate the case twice in distant forums (assuming defendants 1 and 2 are dispensable, *see* Fed. R.Civ.P. 19) or, at worse, no court would have jurisdiction (if defendants 1 and 2 were indispensable, *see id.*).

If the antitrust laws are to be effective, district courts' jurisdiction must reach the limits of the power of the United States of America. In the case of antitrust laws, it makes no sense to tie a district court's jurisdiction to the state in which it sits; it neither promotes the enforcement of antitrust law nor the management of litigation. Other federal laws are different. For example, employment discrimination occurs in a discreet place; generally, the plaintiff and the defendant reside in the same district or near each other. By not providing nationwide service of process, Congress, in those cases, avoids forum-shopping, without the law losing any effectiveness.

This result is neither unique nor unfair. In other statutory schemes, Congress has provided nationwide service of process without limiting jurisdiction. Under the Racketeering and Organized Crime Control Act, 18 U.S.C. § 1961 *et seq.,* a plaintiff may rely on nationwide service of process without relying on the specific venue statute. Under the service of process provision, "[a]ll other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d). Under RICO's specific venue statute, "any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." § 1965(a). Because § 1965(a) supplements the general venue statute, a party may serve an alien under § 1965(d) and rely on § 1391(d) for venue. In other words, if Paper Systems sued Nippon and Oji under RICO, it could have served them in Washington where they transact their affairs and then relied on § 1391(d) to place venue in Wisconsin.

Obviously, Paper Systems could not, without extraordinary creativity, plead this action as a RICO violation because antitrust violations are not predicate offenses. Nonetheless, the comparison with the RICO statute is important for two reasons. First, it shows that Congress has allowed aliens to be sued in districts where they have no contacts. Second, the RICO statute is a distant cousin of the antitrust laws, taking many of its provisions from the latter. Therefore, RICO's provisions are persuasive authority in interpreting § 22 of the Clayton Act.

■ This court's conclusion does not contradict the Supreme Court's dicta in *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). There, the Court held that § 22's "transacts business" was broader than "inhabits" or "found." In passing, the court noted: "[the Clayton Act's] necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'—although neither residing nor 'found' therein—in which case the process may be issued to and served in a district in which the corporation either resides or is 'found.'" When stripped of its historical context, the statement seems to support Nippon and Oji's position. *Kodak*, however, involved a domestic defendant, and, in 1927, § 22 was a broader venue statute than any other that the plaintiff could rely on. Because § 22 was broader, the problem here could not have arisen, and there is no reason to think the Supreme Court considered an issue that did not exist in 1927. *See Go–Video*, 885 F.2d at 1412 n. 6 In context, the statement means only that venue must be proper under some statute for § 22's service of process to establish jurisdiction. Here, venue is proper under 28 U.S.C. § 1391(d), which allows plaintiffs to sue aliens in any district.

On the one hand, the court has little reason to adopt Nippon and Oji's view. The plain language argument contradicts their conclusion; the cases they rely on have little or no reasoning; and, Congress never indicated that § 22's venue clause should have a dual purpose. On the other hand, § 22 has a broad service of process clause, the antitrust laws have a national impact; and the recent trend of cases sides with Paper Systems. Under these circumstances, § 22's service of process clause is independent of § 22's venue clause. Therefore, Paper Systems could use it to obtain service on Nippon and Oji.

## II.  Constitutional Requirements for Personal Jurisdiction

■ For the court to have jurisdiction, Nippon and Oji must have sufficient contact with the forum. Paper Systems argues that the forum is the United States; Oji argues that the forum is Wisconsin. When Congress provides for nationwide (or world-wide) service of process, it invokes the power of the United States. The relevant contacts are those with the United States, not the state in which the district court sits. *Fitzsimmons v. Barton*, 589 F.2d 330, 333 and n. 3 (7th Cir.1979). Otherwise, nationwide service of process would be meaningless.

Because neither Nippon nor Oji dispute that they have sufficient contacts with the United States to satisfy the due process clause of the Fifth Amendment, this court has personal jurisdiction over both defendants.

## III.  Motion to Transfer

■ Finally, Oji moves to transfer the action to the Western District of Washington. Oji wants the court to transfer the action to a district in which no party resides, no witnesses live, and there are no documents. Oji's major argument is that the parties are from Japan; most of the witnesses will be from Japan; and Seattle is more convenient than Milwaukee because Seattle is a shorter plane ride from Japan.

Oji has not proven Seattle is more convenient. First, an alleged (but unnamed) co-conspirator, Appleton Papers, is from Wisconsin. Moreover, in two related actions involving the same parties and the same allegations, Appleton Papers is a defendant; in both cases the plaintiffs have moved to consolidate with this case. At the least, the motion to transfer is premature. If the court consolidates the cases, then Wisconsin becomes the forum with an actual party, and transfer is inappropriate. Further, Wisconsin is more convenient for counsel. At least one of the plaintiff's lead counsel is based in Milwaukee, and the defense counsel are from the East Coast or Wisconsin. Although this litigation may not have overwhelming contacts with Wisconsin, it has more contacts with Wisconsin than Washington.

## CONCLUSION

The court denies Nippon Paper Industries, Co., Ltd.'s motion to dismiss for lack of personal jurisdiction.

The court denies New Oji Paper Company Ltd.'s motion to dismiss for lack of personal jurisdiction.

The court denies New Oji Paper Company Ltd.'s motion to transfer this action to the Western District of Washington.

The court denies Paper Systems Incorporated's motion to file a sur–reply brief.